# WERTHEIMER-SWARTS SHOE COMPANY, Appellant, v. UNITED STATES CASUALTY COMPANY.

## Division One, February 18, 1903.

1. **Insurance: NEGLIGENCE OF EMPLOYEE: AVOIDANCE OF POLICY.** Mere negligence, even of the insured himself, does not avoid an insurance policy, even though that negligence results in the loss of the property. A contract of insurance is excepted out of the general rule which bars one from recovering compensation for an injury which is the result of his own negligence or want of care. Before the insured can be barred from recovery under a policy of insurance, the loss must be the result of his own willful act.

2. ———: **WILLFUL NEGLIGENCE OF EMPLOYEE.** It is not conceded in this case that by an insurance policy which exempted the company from liability for a loss due to the "insured's willful act," the willful act of an employee is chargeable to the insured, even though such employee's act was willfully negligent.

3. ———: ———: ———: **INSTRUCTION ON WILLFUL ACT.** If there is no foundation in the evidence for a defense based on the theory that

the injury resulted from a willful act of the insured, no instruction on the point should be given. A negligent act of a servant of which the insured knew nothing can not be imputed to the insured as "a willful act of negligence."

4. ———: PRESERVATION OF PROPERTY. A clause in a policy indemnifying a property-owner against loss resulting from the accidental discharge of an automatic fire extinguisher, which declares it does not cover loss or damage "caused by the neglect of the assured to use all reasonable means to save and preserve the property insured hereunder" refers to means to be used after the accidental discharge of the machine to prevent greater loss than necessary. It does not refer to negligence which resulted in the discharge.

5. ———: ———: INSTRUCTION: ERROR IN FAVOR OF APPELLANT. An instruction which interpreted the clause requiring the insured "to use all reasonable means to save and preserve the property" to mean that it was his duty "to exercise ordinary care and diligence in discovering the negligence" of an employee which resulted in the accident, is error, but as such instruction adopted appellant's construction of the clause and the jury nevertheless found against him, the error is harmless.

6. ———: ———: DEFECT IN OTHER EXTRANEOUS APPARATUS. Likewise a clause in such policy requiring the assured to "immediately notify the company of any known defect which shall render the said sprinkler system more than usually hazardous and cause such defect to be immediately repaired" has reference only to a defect in the machine itself, and none to any other contrivance in the assured's establishment, such, for instance, as the hooks attached to a window shutter, which being placed on a pipe of the machine, subsequently, through the action of the wind on the shutter, caused the pipe connections to break, and the explosion to follow.

7. ———: ———: FURTHER DAMAGE: DOUBTFUL CLAUSE CONSTRUED AGAINST COMPANY. Where there is any doubt as to the meaning of a clause in an insurance policy requiring the insured "in the event of loss, to immediately protect the property from further damage," but not in express terms excepting from the insured's liability loss which might have been avoided notwithstanding the accident, the rules of construction require the courts to construe the clause favorable to the insured.

8. ———: EXTENT OF LIABILITY: QUESTION OF FACT. Where the policy provided that the company's liability should be such a proportion of $7,500 as $75,000 bears to the actual value of goods on hand at the date of the accident, and there is substantial evidence that the goods at the date of the loss did not exceed $75,000, the verdict of the jury on the question, if submitted to them in proper instructions, is conclusive.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

REVERSED AND REMANDED *(with directions).*

*Lyon & Swarts* for appellant.

(1)   The policy covers all damages caused by any accidental discharge of water, however caused, from the sprinkler system, not coming within the exceptions of clause 9 of said policy, upon the well-known maxim that "an exception expressly carved out of a general clause, leaves all other cases within the scope of the clause." Special provisions or exceptions, limiting the operation of a contract of insurance, must be plain, specific and unambiguous. Ins. Co. v. Lawrence, 10 Pet. 517; Louisville Underwriters v. Durland, 123 Ind. 544; Feibelman v. Ins. Co., 108 Ala. 200; American Surety Co. v. Pauly, 170 U. S. 133; Showalter v. Ins. Co., 3 Pa. Superior Ct. 448; Karow v. Ins. Co., 57 Wis. 68; Catlin v. Ins. Co., Sumner 434; Mickey v. Ins. Co., 35 Iowa 174; Guaranty Co. v. Mechanics' Bank, 80 Fed. 766.   (2)   The policy is one of indemnity, was prepared by the attorneys, officers and agents of the insurer, and will be construed most favorably to the insured. Renshaw v. Ins. Co., 103 Mo. 595; Cunningham v. Casualty Co., 82 Mo. App. 607; American Surety Co. v. Pauly, 170 U. S. 133; 1 May on Insurance, ·sec. 2. (3)   Where the policy, as in this case, does cover a loss "resulting from or caused by the willful act of the assured," negligence of the assured or its employees is no defense.   2 May on Insurance (3 Ed.), secs. 408, 409, 411; Ins. Co. v. Glasgow, 8 Mo. 713; Mueller v. Ins. Co., 45 Mo. 84; Ins. Co. v. Martin, 32· Md. 310; Schneider v. Ins. Co., 24 Wis. 28; Ins. Co. v. Sullivan, 39 Kan. 449; Chaplain v. Railway Pass. Ass'n, 6 Lansing (N. Y.) 72; Keerne v. New England Acc. Co., 161 Mass. 152; Johnson v. Ins. Co., 86 Mass. 388; Devlin v. Ins. Co., 46 U. C. R. 111.   (4)   "Accidental" means happening by chance, unexpectedly or not according to the usual order of things. The leakage of water,

caused in the manner admittedly shown by the facts, could not have been reasonably anticipated by Whittaker, the employee, and much less by appellant. Acc. Ass'n v. Barry, 131 U. S. 100; Lovelace v. Travelers' Prot. Ass'n., 126 Mo. 104; Ray on Negligence of Imposed Duties, pp. 133-4, and note on page 137; 2 May on Insurance, sec. 409, also pp. 924-929; Peoria Bldg. Ass'n. v. Loomis, 20 Ill. 235. (5) Instruction number 1, given by the court at the request of appellant, was not erroneous in failing to define "willful" (as contended by the respondent in the circuit court): (a) Because there was no evidence tending in the slightest degree to prove "willfulness." Jackson v. Ins. Co., 27 Mo. App. 62; Clack v. Southern El. Sup. Co., 72 Mo. App. 506; Brooks v. Railroad, 35 Mo. App. 571; Harrington v. Sedalia, 98 Mo. 583; State v. Grant, 152 Mo. 57; State v. Ferguson, 162 Mo. 668. (b) And because the case was tried before a special jury, summoned at the instance of respondent, and "jurors of ordinary intelligence will be presumed conversant with customary words of their vernacular, such as willfully." Sweeny v. Railroad, 150 Mo. 401; Feary v. O'Neil, 149 Mo. 475; State v. Harkins, 100 Mo. 671; Elevator Co. v. Cleary, 77 Mo. App. 298. (6) To entitle appellant to recover the amount fixed by the appraisement, it was only essential to show that the cash value of the property, at the time of the accident, did not exceed the sum of $75,000. This appellant did show, and by the very best of evidence. Huse & Loomis Co. v. Heinze, 102 Mo. 245; Burnet v. Ins. Co., 68 Mo. App. 343; Ins. Co. v. Richardson, 40 Neb. 1; Allison v. Chandler, 11 Mich. 542; O'Brien v. Benefit Soc., 117 N. Y. 310; Reed v. Ins. Co., 138 Mass. 572. (7) The case was fairly tried; the instructions were more than favorable to the respondent; the jury found the only verdict consistent with the evidence. It is immaterial what the instructions were, as the court should have given a peremptory instruction to the jury to find for the appellant. R. S. 1899, sec. 869; Cass County v. Bank, 157 Mo. 133; King v. King, 155 Mo. 406; Barkley v. Cemetery Ass'n., 153

Mo. 300; Henry v. Railroad, 113 Mo. 525; Baustian v. Young, 152 Mo. 317.

*Percy Werner* with whom is *W. E. Fisse* for respondent.

(1) The statement of the reasons for sustaining a motion for a new trial contained in the record of the court is controlling over a statement in the bill of exceptions. Ortt v. Leonhardt, 68 S. W. 578. (2) The motion for a new trial was properly sustained for errors in instructions given. (3) The first instruction given for plaintiff was erroneous because: (a) Upon the issue of plaintiff's failure to use all reasonable means to save and preserve the insured property it limited the jury strictly to occurrences on the Saturday night preceding the breakage of this sprinkler system. (b) It confined the jury to consideration of the negligent character of Whittaker's actions on this night, without giving to the jury a statement of facts necessary to support the allegation that he was negligent. (c) By insisting that plaintiff must have knowledge of this particular act of negligence on part of its employee before such negligence could be imputed to it, the court excluded from the jury all consideration of plaintiff's duty to advise and instruct its employees as to the danger of this sprinkler apparatus and the need of care to avoid injury to it. (d) The instruction as given practically exempts plaintiff from responsibility for the acts of its employees, even where these acts are negligent and reckless, even though such conduct of the employee arises out of ignorance concerning the nature of this sprinkler system, and notwithstanding that such ignorance is shown by the evidence to be the direct result of plaintiff's failure to warn its employees of the nature of this apparatus and the danger of tampering with it. (e) The instruction is directly contrary to the provisions of the policy. The policy demands that plaintiff shall use all reasonable means to save and preserve the insured property. This comprehends the

entire course of the conduct of the plaintiff towards this sprinkler system, including its regulations for the conduct of its employees at work near the pipes of the system. The instruction, however, proceeds on the theory that plaintiff was under no duty to use care till after it acquired knowledge of some particular misconduct on part of an employee and limited its duty to the correction of that act of misconduct, exempting plaintiff from any obligation to use reasonable means by warnings and instructions of its employees to establish a course of proper conduct that would prevent meddling with this apparatus. The sprinkler was a dangerous machine and the duty of plaintiff to use care to prevent harm from it was correspondingly great. (f) The instruction by its treatment of the defense of willfulness, restrained the construction of the policy provision excluding liability for losses resulting from the willful act of plaintiff to losses produced, according to its deliberate design. The word "design" imports an intention to procure a particular result. The word "willful" imports only that the result is the effect of action deliberately taken, whether or not the result was intended or expected. The instruction therefore prevented and contradicted the words of the policy. (4) The fourth instruction given by the court is vague, misleading and inconsistent with itself, as well as inconsistent with the first instruction. (a) As drawn and first presented the instruction comprehended the whole conduct of the plaintiff in regard to this sprinkler, but as amended and given, the instruction was limited to a particular occasion in a course of alleged negligent conduct of plaintiff and its employees. (b) It was vague in its terms and erroneous in that it directed that in order to exempt defendant from liability it must be shown that plaintiff had knowledge of its own negligence as well as that of its employees. The instruction was without sense unless construed to mean that, under this policy, the plaintiff was not affected by any other negligence than the negligence of its chief officer. (5) The court should have given the peremptory instruction asked

by defendant. (a) The evidence clearly showed that plaintiff had failed to use all reasonable means to save the insured property, because it altogether omitted to control the conduct of its employees so as to prevent wanton interference with the sprinkler, and also failed to warn them of the danger of any interference or meddling with this apparatus. (b) Because plaintiff failed to establish the actual value of all the property at risk at the date of the injury which produced its claim.

VALLIANT, J.—This is a suit on a policy insuring against the accidental discharge of an automatic sprinkling apparatus designed as a fire extinguisher, erected in plaintiff's establishment.

The terms of the policy covered loss or damage to the limit of $7,500 to property in plaintiff's shoe factory, caused "by the accidental discharge or leakage of water from the automatic sprinkler system" in plaintiff's place of business.

The petition set out the terms of the policy, and averred that plaintiff's goods were damaged to the amount named by the accidental discharge of the apparatus, etc.

The answer admitted the issuance of the policy, denied all other averments, and set up several affirmative defenses founded on certain clauses in the policy therein pointed out, viz., clause 7, which requires the assured to immediately notify the company in writing of any known defect in the apparatus rendering it more than usually hazardous, to cause it to be repaired and in the meantime use such additional precaution as safety required. Then it stated that a defect known to plaintiff existed at the time of the accident and had existed for a long time before, which defect consisted in hooks attached to iron shutters in the building that were suffered to become worn or bent so that when the shutters were closed the hooks so adjusted themselves or were so adjusted by plaintiff or its servant as to extend over and catch upon a pipe in the sprinkler machine and

thereby render the system unsafe and more than usually hazardous, for that when a force would be applied to the shutter it was liable to break the pipe; that plaintiff failed to notify defendant of this defect, failed to repair it and failed to use additional precautions in regard thereto. Also clause 9, which declares that the policy does not cover loss resulting, among other causes, from "the willful act of the assured, or by the neglect of the assured to use all reasonable means to save and preserve the property insured hereunder . . . nor from any loss or damage caused by an employee of the assured under twelve years of age." Then the answer states that the damage resulted from the willful act of the plaintiff in this: that on the date of the alleged injury "certain large and heavy iron fire shutters at one of the windows in the sixth story of the building occupied by plaintiff, and mentioned in said policy of insurance, were partly but not tightly closed by the servants and agents of the plaintiff, and certain hooks or rods attached to said shutters, and intended to be fastened in the sill of said window, in order to form brace rods to prevent the closing of said shutters when opened, were by the servants, agents and employees of the plaintiff, voluntarily, intentionally and deliberately fastened to or hooked around and over a pipe forming part of said automatic sprinkler system, said pipe being located underneath a workbench in said sixth story, near to the said window, and at about the height of the said window sill. That because of being so fastened to the sprinkler pipe aforesaid, by means of said brace rods, the movement or swaying of one or both of the said iron shutters produced a pulling strain on the sprinkler pipe, and by said strain the pipe was bent and broken and water was discharged at the point of the breakage so caused by the willful act of the plaintiff's servants and employees.

"And defendant says, that said discharge of water would not have occurred, nor would the alleged injury of plaintiff's goods have ensued, except for the aforesaid voluntary and willful conduct of the servants and

employees of the plaintiff, and that by the said conduct of its servants and employees, the plaintiff's goods in the premises aforesaid were by the plaintiff voluntarily exposed to great, unnecessary and needless danger, and to a risk not within the contemplation of said policy of insurance, and not insured against by this defendant.''

And that the plaintiff's loss resulted from its own neglect to use all reasonable means to save and protect the insured property, in this, to-wit, that the window shutters above mentioned were provided with certain devices for closing and fastening the same, which plaintiff suffered to become defective so that they would not close as they were designed to do, and that in consequence, the servants of plaintiff, the day before the accident, being unable to fold the rods in their proper places, allowed them to project into the room and either fastened them on the pipe of the sprinkler, or left them where they were liable to fall on it, and the consequence was that on the next day, Sunday, when everybody was absent from the premises the iron window shutters swayed and put a strain on the pipe through one of the rods, and thereby broke the pipe and the apparatus was discharged; that plaintiff's servants had, ''for a considerable time prior to the injury complained of,'' fastened the rods to the pipe in that way, and plaintiff knew it or would have known it if it had exercised ordinary care and that it had never instructed its servants not to do so.

A further defense set up in the answer was that it was shown by a schedule attached to the policy that the value of the property covered was $75,000 and the policy provided that if at the date of an accident thereunder the value of the property should exceed that amount the defendant should not be liable ''for more than such proportion of the aggregate liability hereunder than the cash value so stated in said schedule shall bear to the total cash value of such property at the time of said loss,'' and the answer averred that the value of the property at the time of the accident was $125,000. Reply, general denial.

There is little if any dispute about the facts. Plaintiff's establishment, which is a shoe factory, was supplied with an automatic sprinkler. It was a device having pipes running through the factory, under the work benches, etc., designed to discharge water into the building in case of accidental fire. It was set to discharge itself when the temperature about it should reach a given degree. But it was of such a character that it was liable to be discharged by accident, and so to flood the premises with water when there was no fire to be extinguished. It was to indemnify the plaintiff against such accidental discharge that this contract of insurance was entered into.

The windows in plaintiff's factory were provided with iron shutters for the fastening of which, when closed, there were iron bars, and for holding them open during the day there were iron brace rods about three feet long with hooks at the end to fit into eyelets on the sills. When the shutters were closed the bars were designed to be thrown into a socket to hold them and the brace rods were to be folded on the window sills. The duty of closing these shutters and adjusting the bars and brace rods for the windows near his workbench, devolved on an employee of plaintiff named Whittaker, aged nineteen years, who had been in the employ of plaintiff about three weeks and whose main work was cutting shoe tongues. There was a pipe of the sprinkler under Whittaker's workbench, but he testified that he did not know what it was and that no one had instructed him in regard to it. There was testimony, however, tending to show that he had been instructed in the manner of closing the shutters, throwing the bars and folding the brace rods. He testified that during the two or three weeks he was engaged in work there he had usually closed the shutters to the window in question, and instead of folding the brace rods on the window sill had drawn them into the room and laid them on the sprinkler pipe. At closing time on the Saturday evening before the accident after closing the shut-

ters to the window nearest his workbench, he experienced some difficulty in throwing the bar that was to hold them closed, so he merely closed them and drew the brace rods into the room and laid them on the sprinkler pipe. He said: ''I closed them as usual, putting the rods over the pipes, and I could not close the bar, and I stayed there until everybody had gone and finally could not close it and left. Q. Did you ask anybody to help you to close it, did you do anything about getting anybody? A. There was no one there. . . . Q. What reason did you have for going away and leaving the shutters and rods in that condition? A. I never was told any different, I thought the pipe would support the rods, hold the shutter.''

It appears that on the next day, Sunday, in the afternoon, when there was no one at the factory, the unfastened shutter was blown open by the wind, pulling the brace rod which was attached by its hook to the sprinkler pipe with it, breaking the pipe's connection, and causing the sprinkler to be discharged. The apparatus was supplied with an automatic fire alarm, which immediately gave notice to the fire department, and in fifteen minutes the salvage corps was on hand and the deluge was stopped.

The parties selected arbitrators, one each, who agreed on the award of $6,850.15, which amount with interest was the jury's assessment of damages. There was testimony tending to show that at the time of the accident the value of the property covered by the policy did not exceed $75,000.

The cause was tried by a special jury, called at the instance of the defendant, the verdict was for the plaintiff for $7,158.21. Defendant filed a motion for a new trial which the court sustained, assigning as the ground therefor that it had given erroneous instructions. From the order granting a new trial the plaintiff appeals.

The points presented in the brief for respondent, as relating to the instructions are, that the first instruct-

Vol 172 mo—10.

ion for the plaintiff was erroneous, the modification by· the court of the fourth instruction as asked by defendant was erroneous, and that the peremptory instruction for defendant should have been given.  The purport of the instructions complained of will be referred to hereinafter.

I. Our attention is first directed to the issues made by the pleadings.

The answer sets up several affirmative defenses founded on certain clauses in the policy making conditions in the insurance.  Of these the first pleaded is clause 7, which is:  "The assured shall immediately notify the company in writing of any known defect which shall render the said sprinkler system more than usually hazardous, and he shall cause such defect to be immediately repaired, and shall in the meantime use such additional precaution as may be required for safety."  Then the answer sets up as a breach of that condition the alleged defect in the fastening of these window shutters and the manner of their use.  That defense rests on a misconception of the meaning of the policy on that point.  The reference made in that clause of the policy is to a defect in the sprinkling machine against whose accidental discharge the contract for indemnity was entered into.  The clause has no reference to a defect in the fastenings of the window shutters nor to any other contrivance in the plaintiff's establishment.

Clause 9 is as follows:

"9.  This policy does not cover loss or damage resulting from the explosion, rupture, collapse or leakage of steam boilers or steam pipes; nor resulting from any interruption of business or stoppage of any work or plant; nor resulting from freezing; nor resulting from fire or violation of law; nor resulting from or caused by the willful act of the assured, or by the neglect of the assured to use all reasonable means to save and preserve the property insured hereunder; nor resulting from or caused by invasion, insurrection, riot, civil war or commotion or military or usurped power,

or by order of any civil authority; nor resulting from or caused by earthquakes or cyclones, or ·by blasting or explosions of any kind; or by the fall or collapse of any building or buildings; nor does this policy cover any loss or damage to accounts, bills, or currency, deeds, evidences of debt, money, notes or other securities, curiosities, drawings, jewels, manuscripts, medals or models; nor any loss or damage caused by an employee of the assured under twelve years of age.''

The answer founds two defenses on this clause, viz., that the injury ''resulted from and was caused by the willful act of the plaintiff;'' second, that it was caused by plaintiff's failure to ''use all reasonable means to save and preserve the property insured.''

In support of the charge that the injury was caused by the willful act of the plaintiff, the answer specifies that the servant in closing those window shutters ''voluntarily, intentionally and deliberately placed the brace rods with their hooks over the pipes of the sprinkler with the result that when the shutter swayed the rods pulled the pipe out of connection.'' Even if the willful act of a servant could be construed in that connection as the willful act of the master, which is not conceded, still there is nothing in the answer to indicate that the servant intended to set the sprinkling machine in operation.

The most that can be said of the conduct of the servant as there stated, is that he was negligent. It is not stated that he knew that the consequence of putting the rods where he did would be the discharge of the machine. There is scarcely ever a negligent act that has not, somewhere in its source, some act having the appearance of having been intentionally done. The servant intentionally laid the rods on the pipe, but he did not intentionally discharge the sprinkling apparatus. A man sometimes intentionally throws down a lighted match, but it does not necessarily follow that he thereby intentionally caused .the conflagration that was started as a result of his match falling where it did the mischief. Mere negligence, even of the insured

himself, does not defeat the policy. "Mere careless-
ness and negligence, however great in degree, of the in-
sured, or his tenants or servants, not amounting to
fraud, though the direct cause of the fire, are covered
by the policy. Indeed, one of the principal objects of
insurance against fire is to guard against the negli-
gence of servants and others; and, therefore, while
it may be said generally that no one can recover com-
pensation for an injury which is the result of his own
negligence or want of care, the contract of insurance is
excepted out of the general rule. Nor does it make
any difference whether the negligence is that of the
insured himself or of others. The law looks only at the
proximate cause of the loss." [2 May on Ins. (4
Ed), sec. 408.]

The specifications in the answer under this head
are not sufficient to support the general charge that the
damage complained of was the result of the willful act
of the plaintiff, and therefore, there is no such issue
in the case.

The second defense under this ninth clause is
founded on the subdivision which declares that the
policy does not cover loss or damage "caused by the
neglect of the assured to use all reasonable means to
save and preserve the property insured hereunder."
In support of that charge the answer reiterates what
was before averred in regard to the defect in the shut-
ter appliances and their uses and that plaintiff had suf-
fered them to become defective and remain so and had
failed to instruct its servants not to fasten the rods to
the sprinkler pipes.

The "reasonable means" to secure and preserve
the property referred to in that subdivision of clause 9
is, means to be used after the accidental discharge of
the machine to prevent greater loss than necessary. It
has no reference to the care the plaintiff should take to
prevent the accident. The terms to "save and pre-
serve the property insured hereunder" carry the
meaning of property in peril and in need of preserving,
and in the connection used it can have no other refer-

ence than the occurrence of the peril insured against.

Clause 3 of the policy is: "In the event of loss hereunder, the assured shall immediately protect the property from further damage, separate the damaged property and put it in the best possible order. He shall make a complete inventory," etc. Whilst that clause prescribes certain duties to be performed by the assured in case of loss, yet it does not in express terms except from the insurer's liability loss which might have been avoided notwithstanding the accident, if the assured had used all reasonable means at that time to secure and preserve the property insured. The subdivision of clause 9 now under discussion, supplements the requirement of clause 3, and excepts such avoidable loss from the risk taken by the insurer.

If we should construe this clause to mean, as defendant contends, that the plaintiff can not recover for the damage to his goods if, by reasonable care, he could have guarded against the accident, then it takes all the life out of the policy and renders the defendant liable only when the plaintiff and his servants have been without negligence. What indemnity would there be in an insurance policy purporting to cover property in a factory like this, where there are perhaps hundreds of servants, if the insurer were liable only in case no one was negligent? If the insurer did not intend by this policy to take the risk of negligence of the insured, why did it specify that it did not take the risk of loss by the insured's willful act, and if it did not intend to take the risk of the negligence of plaintiff's servants over twelve years of age, why did it specify that it did not take the risk of the negligence of a servant under the age of twelve years? If there was any doubt as to this construction of the clause in question, if it was as susceptible of the construction contended for by defendant as of that above given, the rules of construction would require us to construe it most favorable to the insured, as the following cases cited in the brief of appellant hold: Columbia Ins. Co. v. Lawrence, 10 Pet. 517-8; Louis-

ville Underwriters v. Durland, 123 Ind. 544; Feibelman v. Manchester Fire Ins. Co., 108 Ala. 200; American Surety Co. v. Pauly, 170 U. S. 133; Showalter v. Ins. Co., 3 Pa. Superior Ct. 448; Karow v. Continental Ins. Co., 57 Wis. 68; Catlin v. Springfield Ins. Co., Sumner 434; Mickey v. Burlington Ins. Co., 35 Iowa 174; Guarantee Co. v. Mechanics' Bank, 80 Fed. 766.

Clause 8 of the policy is to the effect that if at the date of the accident plaintiff's goods in the factory amounted in value to more than $75,000 the defendant would be liable only for such proportion of $7,500, the limit of liability, as $75,000 bears to the actual value of the stock of goods at that date. The answer states that the goods at that date were of the value of $125,-000. There was substantial evidence to the effect that the goods at the date of the accident did not exceed in value $75,000, and although there was some evidence to the contrary, yet the question was submitted to the jury under proper instructions and their verdict is conclusive on that point.

If the above analysis of the answer is correct there are no issues of fact in the case except those tendered by the petition, and the general denial in the answer and the plea relating to the value of the goods. And even as to the general denial, it was almost, if not quite, overcome by the affirmative averments in the answer showing how the accident occurred.

II. The first instruction given for the plaintiff stated the contract of insurance as contained in the policy and then stated that if the jury believed from the evidence that the plaintiff's goods were damaged "by the accidental discharge or leakage of water from said automatic sprinkler," etc., the plaintiff was entitled to recover. "And the court further instructs the jury that by the words 'accidental discharge or leakage of water' is meant discharge or leakage of water which happened by chance or out of the ordinary course of things, and without the willful act or design of the plaintiff. And the court instructs the jury that even though they believe from the evidence that the plain-

tiff's servant, Whittaker, was negligent in permitting the hooks attached to the shutters to extend out over or around the sprinkler pipe, yet unless the jury believe from the evidence that said negligence caused the damage complained of, and was known to the plaintiff, or might, by the exercise of ordinary care and diligence, have been known to the plaintiff, or unless the jury believe from the evidence that the plaintiff failed to use such means to save and preserve the aforesaid property as a reasonably prudent person would have used under like circumstances and conditions, then such negligence, if any, will not defeat the right of the plaintiff to recover.''

The argument against this instruction is that it was improper to refer to the act of Whittaker as an act of negligence; that he was not guilty of any negligence because he had not been properly instructed; that his act was the act of the plaintiff and the plaintiff's act in failing to properly instruct its servant was, in the language of the policy, a failure ''to use all reasonable means to save and preserve the property insured hereunder.'' There was evidence tending to show that this boy had been instructed to close the shutters and how to place the brace rods. There was no evidence that anyone told him not to hook them on the sprinkler pipe, and if the plaintiff was guilty of any negligence it was in failure to give that caution. How the plaintiff or any one else could have anticipated that this boy would have hooked those rods on that pipe is not suggested by anything in the record. It seems that he had been laying the rods on the pipe for two or three weeks, but it does not appear that any one knew it. Besides merely resting the rods on the pipe would not have produced this result if the boy had fastened the shutter. It was the leaving of the shutter ajar and unfastened that produced the result. The boy had never left it unfastened before, and the plaintiff had no notice and no reasonable opportunity to discover that he had left it unfastened on that occasion. There is no dispute but that he was ordered

to close the shutter and was shown how to fasten it. Therefore, even if this policy excepted losses caused by the neglect of the insured, there was no evidence that the insured was guilty of any negligence which caused this loss. It was the negligence of the servant only. It is complained that the instruction was erroneous in not defining the term "willful act" of the plaintiff. There was no foundation in the evidence for a defense based on the theory that the injury resulted from a willful act of the plaintiff, and there was no occasion for an instruction on that point.

The only error in the instruction was that it was more favorable to the defendant than it should have been, in this, that it applied the requirement "to use all reasonable means to save and preserve the property" to the plaintiff's duty in discovering how the boy was conducting the business of closing the shutter, whereas that requirement applied, as we have seen, only to avoiding unnecessary damage after an accident. But the instruction adopted the defendant's construction of the clause of the policy, and the cause was submitted to the jury on that theory, the jury found the issue for the plaintiff, and that is the end of it.

The complaint as to the modification of the fourth instruction as asked by the defendant is of the same character and follows the same line of argument as that in relation to the first instruction for the plaintiff, which we have above discussed.

The instruction as modified and given is as follows:

"The court instructs the jury, that under the terms of its policy, offered in evidence, the defendant did not insure the property of the plaintiff therein mentioned against loss or damage caused by or resulting from the neglect of the plaintiff to use all reasonable means to save and preserve such property from loss or damage by water discharged from the sprinkler system mentioned in the policy.

"That by the expression 'use all reasonable means to save and preserve the property,' used in the policy,

is meant that the plaintiff and its employees while acting in the scope of their employment should use every means that a person of ordinary prudence and caution, in a like or similar situation, would adopt in the management, operation and control of said sprinkler system, to prevent any discharge or leakage of water therefrom, and to protect the property from the consequences of any such discharge or leak.

"The degree of care which the plaintiff and its employees were required to exercise under the circumstances, was such care as was reasonably commensurate with the situation and the danger of a discharge or leakage of water reasonably to be apprehended in view of the character, location and construction of this sprinkler system, the arrangements of the building in which it was located, the nature of the property insured, character of the business carried on by the plaintiff, the number of persons employed by it in its business conducted in this building, the nature of their duties, and the circumstances that might produce an interference on their part with this sprinkler system, together with such other circumstances as would reasonably influence and govern a person of ordinary prudence similarly circumstanced.

"If the jury believe from the evidence that the loss or damage here sued for was caused by or resulted from the failure or neglect of the plaintiff, or its employees acting within the scope of their employment, to use all reasonable means to save and preserve the insured property from loss or damage through the leakage or discharge of water from the aforesaid sprinkler system, as defined in this instruction, and *that such failure or neglect was known to plaintiff or by the exercise of ordinary care and diligence might have been known to plaintiff in time to have prevented any discharge or leakage of water from said sprinkler system*, then the jury will find in favor of the defendant."

The modification is indicated by the words in italics.

This instruction, like that given at the request of the plaintiff, was more favorable to the defendant than the law sanctioned. It in effect excepts from the risk loss occurring through the negligence of the insured or its servants. The proposition is thus expressed in the brief of defendant's learned counsel: ''We submit that under the terms of this policy no injury can be regarded as an *accidental* injury which could have been avoided by reasonable effort on the part of plaintiff.'' To sustain that proposition would be to overthrow a well-established principle that lies at the foundation of insurance. This argument is followed up by the counsel who say that the failure of the plaintiff to instruct its employee concerning this machine is such want of care as to preclude a recovery and in their argument on the point of willfulness they say that the failure to so instruct the servant took his act out of the category of negligence and made it the willful act of the plaintiff. Counsel say that this policy differs from one of fire insurance and is peculiar. If it is correctly interpreted by the counsel it has very little, if any, force as insurance against an accident. The criticism of the court's modification is that it does not direct a verdict for the defendant merely because the discharge of the machine was caused by the neglect of the plaintiff or its servant, but required the jury also to find that that neglect was known to the plaintiff or by the exercise of ordinary care would have been known. It is argued that an instruction that the plaintiff knew or by the exercise of ordinary care would have known of its own negligence is meaningless. That criticism is founded more on the form of the expression than the substance or the meaning; no juror of ordinary intelligence would have any difficulty in understanding that it related to the plaintiff's knowledge of its servant's negligent act. There was not a particle of evidence that this plaintiff knew or by the exercise of ordinary care could have known of the negligent act of this servant, which resulted in this catastrophe. He had for two or three

weeks been in the habit of laying the brace rods on the sprinkler pipe and it may be argued that in that period the plaintiff had an opportunity to have discovered that practice. But no injury resulted from that practice and it is not suggested how any injury could have resulted from it. That act became a dangerous factor in bringing about the result when it united with another act, that of leaving the shutters ajar and unfastened. That act was never done but that one time, and the evidence shows that it was unknown to plaintiff and could not, without extraordinary watchfulness, have been discovered.

The instruction should have been refused, but since the court adopted the defendant's theory as to the negligence feature of clause 9 in so far as to apply it to plaintiff's duty before the accident, the modification still left the instruction more favorable than defendant was entitled to.

On the conceded facts of the case the plaintiff was entitled to recover and no judgment for the defendant could have been sustained. There was no error in the instructions of which the defendant has any right to complain. The court erred in sustaining the motion for a new trial.

The judgment is reversed and the cause remanded to the circuit court with directions to overrule the motion for a new trial and enter judgment in accordance with the verdict. All concur.