250 S.W.2d 692 (1952)
KANSAS CITY STOCK YARDS CO.
v.
A. REICH & SONS, Inc.
No. 42774.
Supreme Court of Missouri, Division No. 2.
July 14, 1952.
*694 Robert L. Jackson, W. H. Norton, Kansas City, for appellant.
Roy K. Dietrich, William J. Burrell, Dietrich, Tyler & Davis, Kansas City, for respondent.
VANDEVENTER, Judge.
Plaintiff-appellant, a landlord, sued defendant-respondent, its tenant, for damages caused by a fire, which, it was alleged, was due to defendant's negligence and which destroyed the rented premises. The case, tried to a jury, resulted in a unanimous verdict for defendant and plaintiff appealed.
This cause was tried upon plaintiff's third amended petition and defendant's second amended answer thereto. The first petition alleged the corporate existence of the parties, that plaintiff was the owner of the building and defendant was the tenant. It was then stated that about 8:30 p. m., February 17, 1949, while defendant was in sole possession of the building, "by reason of the negligence and carelessness of defendant" it was destroyed by fire and plaintiff suffered damages in the amount of $18,750. To this petition a motion was filed to make more definite and certain. This motion was not ruled upon, but on January 12, 1950, plaintiff filed its first amended petition alleging:
"* * * that an agent, servant and employee of the defendant was operating a welding torch in connection with the repair of a certain truck located on said premises; that in some manner, the exact particulars of which are unknown to the plaintiff herein, the said truck was caused to catch on fire and the building herein mentioned was caused to be burned and completely demolished; that said fire aforesaid, and the consequent damage to the plaintiff, were caused as the direct and proximate consequence of the negligence and carelessness of the defendants, its agents, servants and employees, in negligently and carelessly using and operating the welding torch aforesaid at said time and place."
To this first amended petition defendant filed another motion to make more definite and certain, which was sustained by the court and plaintiff's second amended petition was amplified by stating:
"* * * that an employee of the defendant, operating in the scope of his employment for the defendant was using a welding torch and was repairing one of the motor trucks of the defendant; that the said employee negligently and carelessly applied the welding torch so as to cause the gasoline in the gasoline tank, on the said truck, to ignite; that thus and thereby the said truck was caused to catch on fire and as the direct and proximate consequence of the negligence and carelessness aforesaid that the fire spread throughout the building and was caused to be completely damaged and destroyed."
*695 On February 23rd, plaintiff filed its third amended petition asserting that defendant's agents were negligent (a) by using an arc welding torch on the truck and bringing the flames of the torch in contact with or so close to one of the gasoline tanks on the truck as to cause it to ignite.
(b) "That defendant's agents negligently and carelessly violated the usual customary and standard customs, practices and methods usually followed by welders engaged in welding on motor vehicles in a garage in that they negligently and carelessly failed to remove the gas tank from the immediate proximity of the welding operation; negligently and carelessly failed to shield the gas tank from the welding operation and the welding torch with asbestos or other proper protective coverings; and negligently and carelessly failed to inspect the containers of flammable liquids for leaks."
(c) That defendant failed to station a workman with a suitable fire extinguisher near the welding operations and to keep him there for at least an hour after the work was completed and (d) violated a provision of ordinance No. 10530 of Kansas City, which required it to keep on hand two or more chemical fire extinguishers and four or more pails of sand for quick use in case of fire.
Paragraph 3 of the Second Amended Answer of defendant to plaintiff's third amended petition denied negligence on its part and further alleged as a defense that plaintiff and defendant had entered into an oral agreement for a month to month tenancy in 1938, at which time it was mutually agreed that the rent should be raised from $75 to $112.50 per month, and the rental was partly to cover the cost of insurance. That it was also mutually agreed that plaintiff was to insure the premises and in case of fire was to look solely to the insurance companies for compensation for its damage by fire, if any, and that the defendant was not to be responsible for damages occasioned by any fire during its use and occupancy of the premises. That pursuant to this agreement, the defendant paid the $112.50 monthly, that the plaintiff procured insurance and that after the fire, certain insurance companies (naming them) collectively paid plaintiff the entire amount of plaintiff's loss. That before the issuance of the policy representatives of the insurance companies inspected the premises, determined the rate of insurance on its then condition and use and upon such inspection issued the policy; that it was further agreed between plaintiff and defendant that loss by fire, if any, would be paid by the insurance companies and that this agreement was for the benefit of both plaintiff and defendant, but that plaintiff, having no claim of its own against defendant, was being used to collect for the insurance companies, whom, it was asserted, also had no just claim.
Plaintiff's evidence showed that in 1933, the premises, located at 1720 Wyoming Street, Kansas City, Missouri were leased to the defendant, who had occupied them from that time up to and including the date of the fire. This lease expired or was abandoned about 1938 and from that time on, the relationship was a tenancy from month to month. It was then agreed that if the building were destroyed by fire, the tenancy was to terminate with no liability on the part of the tenant. At the time of the trial the lease had been lost and no one knew its exact provisions. Prior to 1938, the rent had been $75 per month but at that time it was raised to $112.50 per month. Plaintiff kept the building insured at the cost of $435 per annum, and did not "look to the tenant to reimburse us in case of fire." An inspection was made for the insurance companies in 1937, for their use in fixing rates. The operation of welding equipment in the building was considered in fixing the rates and increased the amount of the premium. The defendants were engaged in the fruit and produce business; the building which was approximately 190 feet by 113 feet, faced east and was used for storage and repair of defendant's trucks. In the southeast corner of the building a space of about 40 by 40 feet had been partitioned off with metallic sheeting and was used as a repair shop.
*696 Plaintiff's evidence further showed that on the evening the fire occurred, three employees of defendant were present in the repair shop and at the time of the fire, one of them was working on a truck with an electric arc welder. This truck had a bed of tin reinforced with steel and wood, 7 feet wide, 7 feet high and 14 feet long. Underneath and near each side of the bed were two steel sills running nearly the full length thereof and on the chassis of the truck were two steel members, the same length and the same distance apart as the two sills on the bed and these had been connected by welding steel angle irons about eight inches long along each side of the truck bed, connecting the sills and the chassis frame. There were approximately 7 of these pieces of angle iron on each side.
Defendant's servant, the welder, began welding on the right side of the truck, had gone full length to the back and turned around the end and was coming back on the left side and, at the time of the fire, was welding at a place between the two sets of rear wheels. While the welder was so engaged, another employee noticed that the cab of the truck was on fire. Underneath the seat in the cab was the main gasoline tank and on the right side, about two feet behind the cab attached to the frame was an auxiliary tank of gasoline. The evidence strongly indicated that these tanks were full at the time of the fire. An effort was made to extinguish the blaze in and around the cab but was unavailing. The result was, the truck was destroyed, as was the building and many other trucks housed in it.
Plaintiff also offered testimony to the effect that the customary and safe way to weld the frame would have been to remove the auxiliary tank and put a wet carpet or something similar between the body and the cab extending to the floor.
The plaintiff's building was insured for its actual value, $17,500, which was paid to plaintiff by certain named insurance companies. It was admitted that this suit was brought for the benefit of the insurance companies because of a subrogation clause in the insurance policy. Plaintiff and its insurers knew that welding was being done in the garage and insurance rates were increased because of that fact.
Defendant's evidence showed that there were three men working in the garage the night of the fire, John C. Pearman, the foreman, William V. Emert, the welder and Curtis Tompkins, a helper. Emert was using an electric welder with 220 volts of electricity. Defendant's evidence further showed that the welding process did not start on the right hand side at the cab, that the first two welded connections had not broken, but that it was two or three feet from the cab to the one they first began to weld. Grease and dirt were removed from the places to be welded and an inspection showed no leaks of oil or gasoline. Emert, an experienced welder, proceeded welding as he went down the right hand side of the body of the truck, around the end and up the left hand side and had arrived at a point between the two sets of rear wheels when the fire occurred. The welding implement and the fire from it were 8 or 10 feet from the cab. Emert was down underneath the truck with his back turned toward the cab. He was between the sparks caused by the electric welder and the gasoline tank located under the seat. This tank was completely protected by the steel cab except the bottom of it, which was open. Between the place he was welding and the cab, extending across from the two sills of the chassis were two wide steel plates, one of them solid and the other having a hole in it for the drive line or transmission shaft. It was about an hour from the time the first plate on the right hand side had been welded and the breaking out of the fire. The supplementary gasoline tank had been covered and properly protected while welding near it and it was contended by defendant that the cab, itself, was sufficient protection for the tank under the seat. Defendant's evidence showed that the method used and the precautions taken in the welding were customary and proper. While welding on the right side of the body of the truck near the auxiliary tank, in addition to covering the top and ends of the tank with sheets of Masonite, Curtis Tompkins was required to stand there with a fire extinguisher ready *697 to put out any blaze that might occur. After the welder moved on and away from the supplementary tank, Tompkins left the fire extinguisher handy and was doing some other work on another truck by the side of the truck upon which the welder was working. There were also other fire extinguishers of various kinds on the premises and when the fire was discovered, two of them, properly working, were put into action but were insufficient to stop the blaze.
There was testimony that many fires in automobiles occur, and this one could have occurred from defective wiring.
Until this action was commenced, plaintiff had never asked defendant to pay for the damage caused by the fire or to restore the destroyed premises. It was agreed, when the contract of tenancy from month to month was entered into, that defendant was to be exempt from liability if the premises were destroyed by fire from any cause, including defendant's negligence, and that in case of the destruction of the premises by fire, the tenancy ended and the insurance companies would be held to pay the loss, which they did.
The plaintiff-appellant's first contention is that the trial court erred in overruling their motion to strike paragraph 3 of defendant's second amended answer upon the ground that it constituted no defense, that defendant was in fact contracting against its liability for negligence, which was against public policy.
The record shows that on May 14, 1951, plaintiff filed a motion to strike paragraph 2 of "defendant's amended answer to plaintiff's third amended petition" on the grounds that it did not constitute a defense and another motion to make more definite and certain, in that the court require defendant to state whether the alleged agreement was oral or in writing and further to state whether it contained a provision whereby the defendant was not liable for negligence in the conduct of its business.
The court sustained the motion to make the answer more definite and certain but refused to strike out paragraph 2 of the amended answer. On May 15 the defendant filed its second amended answer to plaintiff's third amended petition complying with the order of the court and to this answer no other motion was filed. However, inasmuch as paragraph 3 of the second amended answer is very similar to paragraph 2 of the "amended answer of defendant to plaintiff's third amended petition," we will consider the question as properly raised.
Defendant's evidence in regard to this contract was that from 1933 to 1938, it had been paying $75 per month as rent for the premises, under a written lease. That in May, 1938, the plaintiff, through its president, Mr. Dillingham, had a meeting with representatives of defendant and informed them that the rent must be raised; that the taxes and insurance costs were high and consequently defendant would have to pay more money. The plaintiff agreed to carry the insurance on the property and that in case of fire, there would be no obligation whatsoever on the defendant. This agreement was satisfactory to both parties. Acting under this agreement, plaintiff procured the proper insurance, fully covering the value of the building, and the defendant began paying monthly $112.50. The tenancy was from month to month and in case the building was destroyed, the tenancy was to be considered as terminated, the defendant was under no obligation thereafter to plaintiff, whether the fire occurred through defendant's negligence or otherwise.
From 1938 until February 17, 1949, the plaintiff kept the place insured. Defendant continued to operate its business, the character of which was well known to plaintiff as well as representatives of the insurance companies, and continued to pay the monthly rental. After the fire, the insurance companies paid the loss in full and it was not the intention of the plaintiff to hold defendant liable in any manner whatsoever. The strong inference is, by witnesses for plaintiff, that the suit was only brought upon the demand of the insurance companies under the subrogation clause in the policy. That clause was:
"This Company may require from the insured an assignment of all right *698 of recovery against any party for loss to the extent that payment therefor is made by this company."
The raise in rent and payment thereof was in effect requiring the defendant to pay the insurance and it was paying it in order to relieve itself of any liability in case the building was destroyed by fire. While payments of the insurance premiums were actually made by the plaintiff, those payments were really obtained from the increased rental and the insurance was taken out and maintained for the joint benefit of the landlord and the tenant.
It is not every contract which seeks to avoid liability from the results of one's negligence that is against public policy.
It is no defense to a suit on an ordinary fire policy to assert that the property was destroyed by fire due to the negligence of the insured not amounting to fraud. Wertheimer-Swarts Shoe Co. v. United States Casualty Co., 172 Mo. 135, 72 S.W. 635, 61 L.R.A. 766, 95 Am.St.Rep. 500; Fleisch v. Insurance Co. of North America, 58 Mo.App. 596; Home Ins. Co. v. Springdale Motor Co., 200 Ark. 893, 141 S.W.2d 522.
If the property were deliberately burned by the insured, that is another question, but it is a matter of common knowledge that a great many fires which destroy property are due to the negligence of someone. See Commercial Union Assurance Co. v. Foley Bros., 141 Minn. 258, 169 N.W. 793.
Liability policies universally cover negligent acts of the driver of motor vehicles. Otherwise there would be little left covered by the policy. There is no public policy in Missouri violated by such insurance contracts. Ford v. Stevens Motor Car Co., 203 Mo.App. 669, 220 S.W. 980; Terminal R. Ass'n of St. Louis v. Ralston-Purina Co., 352 Mo. 1013, 180 S.W.2d 693.
The fact that by having such insurance the insured might become negligent or careless in protecting the property cannot be said to make the contract void as against public policy. Fidelity & Deposit Co. of Maryland v. Moore, D.C., 3 F.2d 652.
It is well settled law that, in a contract between private persons, and where the public is not immediately involved, a landlord may contract with his tenant against any damage occasioned by the landlord's negligence. Commercial Union Assurance Co. v. Foley Bros., 141 Minn. 258, 169 N.W. 793; Rodier v. Kline's, Inc., 226 Mo.App. 474, 47 S.W.2d 230; Gralnick v. Magid, 292 Mo. 391, 238 S.W. 132, 28 A.L.R. 1530; Cannon v. Bresch, 307 Pa. 31, 160 A. 595; Cobb v. Gulf Refining Co., 284 Ky. 523, 145 S.W.2d 96; Sinclair Refining Co. v. Stevens, 8 Cir., 123 F.2d 186.
In Lerner v. Heicklen, 1926, 89 Pa.Super. 234, it was held that a landlord by fixing a lower rental for his property could legally bargain with his tenant, that he would not be liable for negligence on his part in connection with the leased premises. Why then could not the tenant by paying an increased rental, bargain against liability to his landlord for his negligent acts? In General Mills, Inc., v. Goldman, 8 Cir., 184 F.2d 359, it was held that a tenant could.
In the case before us, the parties were engaged in a private business, were contracting about a strictly personal matter, were dealing at arm's length and upon equal footing; there is no charge of wanton, culpable or gross negligence, fraud or incendiarism. The interests of the public were in no way involved. The contract was not against the public policy of Missouri.
We think the defense in paragraph 3 of the second amended answer was a legitimate one and that it was supported by the evidence. The theory was properly presented to the jury in instruction No. 4 offered by the defendant and it was not error for the court to give it.
It follows likewise that evidence relating to the agreement was admissible to sustain that defense. There is no question but that, under certain circumstances, a tenant may be liable to his landlord for damage to property resulting from the tenant's negligence, but this is not one of those cases. 51 C.J.S., Landlord and Tenant, § 261.
As to whether the fire was actually caused by the negligence of defendant, the evidence was conflicting. The jury either believed that defendant had contracted *699 with plaintiff relieving it from liability for negligence or that defendant was in fact not negligent or both. In either event, the jury settled these questions by their verdict upon conflicting evidence. Allen v. Kraus, 358 Mo. 520, 215 S.W.2d 739.
The appellant next insists that the agreement, if made, was not in writing, was not to be performed within a year and therefore came within the provisions of the Statute of Frauds, which requires agreements that are not to be performed within one year from the making thereof to be in writing. We might observe that defendant, by its second amended answer, pleaded that this was an oral agreement. The plaintiff filed no reply and did not set up the defense of the Statute of Frauds. Neither was any objection made to the testimony on that ground. The statute should have been pleaded if it was to be interposed as a defense, State ex rel. Place v. Bland, 353 Mo. 639, 183 S.W.2d 878; Section 509.090 RSMo 1949, V.A.M.S.; McGuire v. Hutchison, 240 Mo.App. 504, 210 S.W.2d 521, but be that as it may, both parties agree that it was a tenancy from month to month, that it could be terminated by the proper statutory notice. In fact, representatives of plaintiff at one time told representatives of defendant that it was their intention to terminate it. It could have been terminated by either party by giving 30 days' notice. Section 441.060 RSMo 1949, V.A.M.S. The fact that they continued the tenancy from month to month from 1938 to 1949, does not bring it within the Statute of Frauds. The law relative to this question is so clearly and succinctly stated in 37 C.J.S., Frauds, Statute of, § 55, p. 562, that we quote it:
"A contract which is not expressly to run for a period longer than a year and is terminable at will, or on less than a year's notice, is not within the statute, since by the exercise of the option to terminate it may be wholly performed within the year, and this rule applies although the contract is of a continuing nature, and, in fact, has extended for more than a year."
See also Lambur v. Yates, 8 Cir., 148 F.2d 137.
Neither was this contract one to answer for the debt, default or miscarriage of another. In effect, it was an agreement to pay an increased rental if the tenant would be absolved from all liability in case the premises were damaged or destroyed by fire. The agreement to answer for the default of the tenant was made by the insurance companies with the plaintiff and that contract was in writing in the form of an insurance policy.
Appellant next complains that the trial court erred in "sustaining defendant's motion to make plaintiff's original and first amended petitions more definite and certain" as to the allegations of negligence, thereby refusing to allow plaintiff to proceed under the theory of res ipsa loquitur. In the first place, a motion to make a petition more definite and certain is addressed to the sound discretion of the trial court, whose ruling thereon will not be disturbed provided a sound legal discretion was exercised. Hartvedt v. Harpst, Mo.Sup., 173 S.W.2d 65; Ozark Fruit Growers' Association v. Sullinger, Mo. App., 45 S.W.2d 887; Campbell v. State Highway Commission, 234 Mo.App. 1111, 139 S.W.2d 559.
In plaintiff's first petition, it was merely alleged that the fire was the result of defendant's negligence and carelessness. A motion was filed to make more definite and certain but was not passed upon. According to the record, plaintiff voluntarily filed a first amended petition somewhat amplifying the allegations of negligence. To this a motion was filed to make more definite and certain and this motion was sustained. Plaintiff then filed a second amended petition further amplifying the allegations of negligence. After defendant had filed its answer, plaintiff filed its third amended petition and in great detail specified the various allegations of negligence. This petition appears to have been voluntarily filed and it was upon that petition the case was tried.
We think the learned trial court did not abuse its discretion in sustaining the motion to make more definite and certain as to plaintiff's second amended petition and we fail to see how plaintiff could have been *700 injured in any event. The case was fully developed in the evidence. Apparently every avenue of information was explored, and properly presented to the jury. The mere occurrence of a fire does not raise a presumption of negligence. Kapros v. Pierce Oil Corporation, 324 Mo. 992, 25 S.W.2d 777, 78 A.L.R. 722. The case last cited was cited in Menth v. Breeze Corporation, Inc., 4 N.J. 428, 73 A2d 183, 186, 18 A.L.R.2d 1071, where it was said:
"The rule of res ipsa loquitur is infrequently applied to cases involving fires, and to a lesser extent to explosion cases. [Citing cases.] The reasons are not difficult to perceive. The cause of a fire is generally unknown, fires commonly occur where due care has been exercised as well as where due care was wanting. Where a fire originates on a defendants' premises, that alone is not evidence that it was started by the defendant, nor that the fire was caused by any negligence on its part."
See also Hendricks v. Weaver, Mo.Sup., 183 S.W.2d 74.
Witness Charles J. Saunders, Fire Prevention Chief of Kansas City, identified a document in his department and of which he had charge, as a report of the fire in question. This record was kept by authority of an ordinance of Kansas City. It was prepared by witness McGrury, Department Fire Chief, from notes prepared by one Leo Nee, Battalion Chief. In this report was this notation: "Cause of firethe careless use of welding torch." The evidence shows that no fireman or representative of the fire department arrived at the scene of the fire until it was so intense, it was impossible to go into the building. Mr. Nee was not present when the welding was taking place and therefore could have obtained no information about it except hearsay. The record is silent on the matter but he must have obtained his information about the use of the welding torch from one of the three employees. They were the only ones who knew about it. He turned his notes over to Mr. McGrury, from which Mr. McGrury made the report and signed it. This could only have been offered to prove the primary issue of negligence. Clearly the notation in the report was a conclusion based upon hearsay twice removed. It was an opinion upon the very question the jury was to decide, whether the defendant was negligent in causing the fire. Clearly the trial court did not err in excluding that portion of the report. Franklin v. Skelly Oil Co., 10 Cir., 141 F.2d 568; 153 A.L.R.Anno. 163.
This conclusion is not in conflict with the case of Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239, 241. In that case the defendant was sued for false imprisonment and in the police report offered in evidence was this statement:
"Mr. Wimberly (defendant) stated that he thought the prowler was an ex-employee by the name of Carl Elvin Snider (plaintiff), who lives in Excelsior Springs, Missouri." (Parenthesis ours.)
This case was affirmed but Judge Hyde stated there was an "exception to the hearsay rule admitting official reports made by an officer on the basis of his own personal investigation and knowledge, * * *." He then said:
"If it appeared that this report would make a jury case for plaintiff and it seemed reasonable that a sufficient showing for its admissibility could be made, we would have discretion to remand the case for that purpose."
The difference between the case of Snider v. Wimberly and the case at bar is clearly apparent. "In so far as documents set forth the mere opinions or conclusions of public officials, they are inadmissible as official records or documents, * * *." 32 C.J.S., Evidence, § 637, page 490.
Whether the plaintiff in this case is the real party in interest has not been briefed and argued and upon that question we are expressing no opinion.
The judgment of the trial court should be and is affirmed.
WM. L. VANDEVENTER, J., Springfield Court of Appeals, sitting as Special Judge by transfer order.
All concur.