AMOS J. BUCKEY v. INDIANHEAD TRUCK LINE, INC.[1]

June 15, 1951.

Nos. 35,452, 35,453.

[1]Reported in 48 N. W. (2d) 534.

*Robins, Davis & Lyons,* for appellant.

*Lewis L. Anderson,* for respondent.

LORING, CHIEF JUSTICE.

This appeal involves two actions brought by Amos J. Buckey to recover for property damage to his 1947 Reo truck-tractor (hereinafter referred to as the Reo truck) and for loss of its use during the time required for its repair. These actions arise out of two different accidents, which took place on November 6, 1947, and February 8, 1948, while plaintiff's truck was in the possession and under the control of defendant, Indianhead Truck Line, Inc., under the terms of a written contract between the parties. The cases were consolidated in the trial court and, by stipulation of the parties, were tried by the court without a jury. The court made findings of fact and conclusions of law and ordered judgments for plaintiff in amounts equal to the fair value of the use of the Reo truck during the periods when it was out of use for repairs, plus costs and disbursements. Plaintiff moved for amended findings and conclusions of law or a new trial in each case. The trial court entered orders amending the findings and conclusions of law in certain particulars not important here and otherwise denied plaintiff's motions. Judgments were entered for plaintiff as previously ordered, and plaintiff has appealed. Since the only difference in the two actions is in the names of defendant's employe-drivers, the dates of the accidents, the amount of the damage to plaintiff's Reo truck, and the time necessary for repairs after each

accident, the record in only one of the cases has been printed on appeal.

Prior to June 20, 1947, plaintiff owned a 1947 Reo truck, and on that date he entered into a written agreement with defendant leasing the truck to defendant for use in its business as a motor carrier of gasoline, fuel oil, and petroleum products. The written agreement under which the truck was leased to defendant contained the following provision:

"(6)  Lessor will carry adequate fire, theft and collision insurance upon such vehicle.  Lessee will carry all liability, property damage and cargo insurance."[2]

In compliance with this provision, plaintiff covered his Reo truck with collision insurance by purchasing a policy from the Iowa

---

[2]The terms used in this provision of the contract are defined in the Dictionary of Insurance Terms (1949), published by the United States Chamber of Commerce as a project of that organization's Insurance Committee, as follows (pp. 16, 36, 37, and 14 respectively):

*"Collision insurance:*  Insurance against loss to insured property caused by striking or being struck by an object; includes loss caused by upset."

*"Liability insurance:*  Insurance against loss due to liability; covers both damages and expenses connected with alleged or actual liability."

*"Liability insurance, property damage:*  Insurance against loss due to claims for damages because of injury to others' property."

*"Cargo insurance:*  Insurance against loss to cargo carried in ships or by other means of transportation."

In light of the fact that the contract refers to property damage insurance as a separate coverage, the provision requiring liability insurance apparently refers to "Liability insurance, bodily injury," which is defined as follows (Dictionary of Insurance Terms, p. 37): "Insurance against loss due to claims for damages because of bodily injury (including death) to persons not employees." No evidence was introduced to clarify the meaning of these insurance terms, but the above definition of terms appears to be quite standard, and when the entire contract provision is read as a whole the definition of terms appears sufficiently accurate for our present purposes. The net effect of the insurance provisions of the contract would, therefore, seem to be that plaintiff was to insure against damage to the truck and that defendant was to insure against liability to third parties arising out of the operation of the truck as a carrier.

Mutual Casualty Company. There is no finding as to the amount of such policy, the only evidence along this line being the contract provision which required *adequate* insurance.

The following additional provisions of the written agreement show the general nature of the arrangement between the parties:

"(2) Lessor agrees for a period of six months from the date hereof to lease said equipment to the Lessee from time to time as required by the Lessee in its said business, for operation on the date or dates specified by Lessee for such trips and between such points as may be designated by Lessee.

"(3) Lessee agrees to pay to Lessor for the use of said equipment 70 per cent of the gross revenues received by Lessee from hauls made by said equipment less wages paid by Lessee to the driver and operator of such equipment. Rentals shall be paid Lessor at Lessee's place of business in the City of St. Paul, Minnesota, on the 1st and 15th days of each month.

"(4) Lessee's dispatcher will dispatch all equipment and Lessor will be responsible to see that the equipment is available at the place designated by said dispatcher. If because of a breakdown in the equipment a shipment is delayed for more than one hour, Lessor will assume any expenses that might be incurred by the Lessee to place the equipment in repair and the wages of the servant of the Lessee driving said equipment, said amounts to be deducted from the rentals herein provided for.

"(5) Lessor agrees to provide all license tags and Minnesota permit plates and to maintain the equipment so leased in good operating condition and to meet all requirements imposed upon the equipment by the Interstate Commerce Commission, or any other public utility commission, or other authority in any state, that is to say, that the equipment must be maintained in such condition with such safety devices as will meet the requirements imposed by proper authority. During the term of this lease, Lessor agrees to purchase all gas and oil used by such equipment and all tires needed or acquired for such equipment from the Lessee."

The written agreement referred to herein—portions of which are quoted above—is a mimeographed form contract prepared and generally used by defendant.

On February 8, 1948, plaintiff's Reo truck was damaged while in the service of defendant.[3] Plaintiff took possession of the truck near Chaska, Minnesota, and had it returned to St. Paul, where it was repaired at a cost of $1,329. Plaintiff paid this repair bill and was partly reimbursed by the Iowa Mutual Casualty Company, such reimbursement being in the full amount provided by the policy carried by plaintiff. No evidence was introduced to show the manner in which the accident which caused the damage occurred.

The trial court found that a reasonable time for the repair of the truck was five weeks following the date on which the truck was damaged and that the fair value of the loss of use for the five weeks it underwent repairs was $180.

The principal issue in these cases relates to the proper interpretation of paragraph No. 6 of the written rental agreement, under which plaintiff delivered his Reo truck to defendant. Defendant, the lessee, in effect contends that the clear purposes and meaning of paragraph No. 6 are that plaintiff was to carry collision, fire, and theft insurance upon the truck for the mutual benefit of both parties to the rental agreement and that defendant, the lessee, was to do likewise with reference to liability, property damage, and cargo insurance. Plaintiff, on the other hand, contends (1) that to interpret paragraph No. 6 as depriving him of his right to recover from defendant for the full amount of the damage done his truck would have the effect of allowing defendant, a bailee,[4] to contract against

---

[3]In stating the facts on appeal, this court will follow the lead of the parties in giving the facts in only one of the cases being appealed, the result in that case to govern both cases, since the controlling facts are in all respects identical.

[4]The parties to this action have been somewhat concerned as to the nature of their relationship. It is obvious that the relationship between the parties here has the elements of both a bailment and a lease. Lord Holt designated a relationship wherein goods were lent to a bailee to be used by him for hire as a bailment *locatio rei*. Black, Law Dictionary (3 ed.) 184.

liability for its own negligence; (2) that such a contract is invalid; and (3) that, even if contracts of this kind are not invalid, the provisions of paragraph No. 6 should not be interpreted as limiting or eliminating defendant's liability for damage resulting from its own negligence.

We think that plaintiff's first contention is clearly unsound; that the question raised by his second contention therefore need not be decided in this case; and that his third contention presents the real problem for decision.

With respect to plaintiff's first contention, it does not follow that an agreement by a bailor to give a bailee the benefit of the bailor's insurance is equivalent to a contract freeing the bailee from responsibility for his own negligence. In such cases, the bailee is still held fully responsible for the consequences of his negligence, the only difference being that his liability is limited to the extent that the bailor is compensated by insurance carried in accordance with the agreement between the parties. We think it is amply clear that the trial court took this view in awarding damages in this case. The trial court awarded plaintiff damages for the loss of use of the Reo truck while it was being repaired. As the following discussion will demonstrate, this was entirely proper.

This court held in Zanker v. Cedar Flying Service, Inc. 214 Minn. 242, 244, 7 N. W. (2d) 775, 776, that:

"For some years the rule has been well established in this state that when a plaintiff has proved a bailment the defendant has the burden of establishing before the jury that defendant's negligence

Sometimes it makes no difference whether the relationship be treated as a lease or a bailment; but, where the terms of the lease make provisions contrary to the usual rules governing bailments, the provisions of the lease may govern. Laughren v. Barnard, 115 Minn. 276, 132 N. W. 301. The extent to which the parties to a bailment may enlarge or diminish the common-law liability of the bailee by express bailment or rental agreement is the subject of annotation in 150 A. L. R. 266 at p. 269 (enlarged liability) and 175 A. L. R. 1 at p. 8 (limiting liability). For convenience of reference in the present opinion, the legal status of the parties will be designated as "bailor" and "bailee."

did not cause the loss of the property bailed. This is not merely the burden of going forward with the proof but the burden of establishing due care on his part by a preponderance of the evidence."

Since defendant made no attempt to assume the burden of disproving its own negligence in the present case, plaintiff was entitled to recover for the damage done to his truck while it was in defendant's possession, unless the provisions of paragraph No. 6 of the rental contract reduces defendant's liability by giving it the benefit of plaintiff's insurance.

However, it is plaintiff's contention that, even if defendant were entitled to the benefit of plaintiff's insurance, defendant has failed to sustain the burden of proving the extent of the insurance recovery. Plaintiff further points out that the trial court specifically found that he was only partly reimbursed for his loss by insurance.

With respect to these contentions, we go no further than to state that plaintiff will not be heard to complain of his own breach of contract. Plaintiff agreed to procure *adequate* collision, fire, and theft insurance. The trial court found that he recovered the full amount of his policy in connection with both accidents out of which these claims arise; and, if the amounts recovered were not adequate to reimburse plaintiff for the damage done to his truck, it was the result of his own breach of contract. However the matter might stand on different facts, in the present cases it was not incumbent on defendant to introduce evidence to prove that plaintiff's insurance fully reimbursed him for the damage done to the Reo truck. It was sufficient for defendant to introduce the contract provision wherein plaintiff agreed to procure adequate insurance on the Reo truck against collision, fire, and theft and to prove that plaintiff recovered under such policy as a result of the accident for which he seeks to hold defendant liable. It is obvious that if defendant was to have the benefit of plaintiff's insurance at all, defendant was to have the benefit of adequate insurance, so that no claim would lie against it for that portion of plaintiff's loss against which he was obliged to protect himself by insurance.

Since defendant did not prove that plaintiff's insurance reimbursed plaintiff for the loss of use of the truck while it was being repaired, and since there is no basis for presuming that collision, fire, and theft policies reimburse the assured for such losses, we think that the trial court acted properly in awarding plaintiff damages for that portion of his loss. The very fact that such damages were awarded refutes plaintiff's contention that paragraph No. 6 was given effect as a contract, relieving defendant from liability for its negligence. To the extent that defendant benefits by plaintiff's insurance, defendant's liability is reduced, but it is reduced in the same way that any ordinary insurance contract reduces the liability of the assured for the consequences of his own negligence. There is no material difference between the situation where a bailee procures insurance directly from an insurance company and the situation where he contracts with his bailor to procure it for him. It being well established that the former arrangement is valid, the latter arrangement is no less valid.[5] In both cases, the bailee is contracting for insurance to save himself harmless from his own negligence.

In the light of the foregoing analysis, we think that we are not confronted with the problem of determining whether a contract provision is valid which frees a bailee from liability to his bailor for damages resulting from the bailee's negligence.

As previously stated, the real issue presented in these cases is whether paragraph No. 6 of the rental contract gives defendant the benefit of plaintiff's collision, fire, and theft insurance. Although paragraph No. 6 does not, in express terms, state that defendant is to have the benefit of plaintiff's insurance, and although at least

---

[5]In Griffiths v. Broderick, Inc. 27 Wash. (2d) 901, 182 P. (2d) 18, 175 A. L. R. 1, the court pointed out that thousands of automobile and truck owners continually operate under insurance contracts which they have procured to save them harmless from the results of their own negligence and that the validity of such contracts is unquestioned. The court then went on to cite N. P. Ry. Co. v. Thornton Brothers Co. 206 Minn. 193, 288 N. W. 226, which held that an insurance feature in an ordinary contract is fully as valid as a conventional insurance contract.

one court has made its decision turn on that fact,[6] we think that the absence of such express language in paragraph No. 6 should not be decisive of the issue in the present case. If the provisions of paragraph No. 6 clearly manifest a design to give defendant the benefit of plaintiff's insurance and if no other plausible purpose for paragraph No. 6 can be suggested, we should not declare it a nullity merely because its obvious purpose is not expressly stated. We are entitled to assume that something was intended by the parties when the insurance provisions of paragraph No. 6 were written into the rental contract.

An examination of paragraph No. 6 suggests quite clearly that it was intended as a provision to divide the burden of insuring against the various risks incident to performance under the rental agreement. Plaintiff was renting his Reo truck to defendant for use as a carrier upon the highways. There was risk of damage to the truck and of damage to the persons or property of third parties. Both parties were subjected to these risks. Defendant, as bailee of the truck, faced the risk of being held liable to plaintiff for damage done to the rented truck while it was in defendant's possession. It also faced the risk of being held liable to third persons for damage resulting from the operation of the truck. On the other hand, plaintiff as owner of the truck faced the risks incident to his vicarious liability to third persons for damages resulting from negligent operation of the truck by a person driving it with his consent.[7] Plaintiff had as much occasion to bargain for the benefit of defendant's insurance as defendant had to bargain for the benefit of plaintiff's insurance. In such circumstances, the clear import of paragraph No. 6 is that by its provisions the parties intended to divide the burden of insuring against risks to which

---

[6]See, United States F. Ins. Co. v. Saks & Co. 174 Misc. 38, 20 N. Y. S. (2d) 39.

[7]M. S. A. 170.54. It seems quite clear that when an automobile is rented to another for use on the highways the latter will be regarded as operating it with the owner's consent, much the same as if the automobile had been lent gratuitously. Cf. Foster v. Bock, 229 Minn. 428, 39 N. W. (2d) 862.

they were both subjected and that each party was to have the benefit of the insurance which the other party procured. Since even without express agreement either party would be entitled to insure these risks for his own benefit, very little purpose can be ascribed to paragraph No. 6 unless it is interpreted as requiring each party to insure against the specified risks for the benefit of both parties. Defendant's interest in having plaintiff procure insurance for plaintiff's sole benefit is remote at best. It is wholly unrealistic to assume that defendant bargained for such a dubious benefit.

Although an instrument is normally to be construed against its draftsman[8] and although a "benefit of insurance" provision in a contract may be strictly construed,[9] express "benefit of insurance" language should not be necessary to the accomplishment of that purpose where such purpose is otherwise clearly indicated.

The two principal cases[10] to which we have been referred by counsel have reached opposite results with reference to the problem here presented, but we think that the better-reasoned and more realistic opinion by far is found in Newport News Shipbuilding & Dry Dock Co. v. United States (4 Cir.) 34 F. (2d) 100. In that case, the United States government, desiring to have a certain vessel repaired, entered into a contract with a shipbuilding company for that purpose. Although the contract was a detailed instrument, the provision which concerns us here is one wherein the United States agreed to continue its existing hull, machinery,

---

[8]Geib v. Haynes Corp. 185 Minn. 295, 240 N. W. 907; In re Liquidation of Farmers & M. State Bank, 206 Minn. 149, 288 N. W. 19; 2 Dunnell, Dig. & Supp. §§ 1832, 2686; 3 Id. § 4659.

[9]In United States F. Ins. Co. v. Saks & Co. 174 Misc. 38, 20 N. Y. S. (2d) 39, it was strongly implied that an agreement intended to give one party the benefit of another party's insurance should be plainly and simply worded to that effect. For a very specific "benefit of insurance" clause, see Phoenix Ins. Co. v. Erie & Western Transp. Co. 117 U. S. 312, 6 S. Ct. 750, 29 L. ed. 873.

[10]Newport News Shipbuilding & Dry Dock Co. v. United States (4 Cir.) 34 F. (2d) 100, and United States F. Ins. Co. v. Saks & Co. 174 Misc. 38, 20 N. Y. S. (2d) 39.

and equipment insurance on the vessel while it was in the shipbuilding company's possession. When the vessel was subsequently destroyed while in the shipbuilding company's possession, the company contended that the insurance provision in the contract gave it the benefit of the hull, machinery, and equipment insurance carried by the United States. When it was argued for the government that the insurance was intended to be for the sole benefit of the United States, the court stated (34 F. [2d] 107):

"To say that the meaning of the provision in the contract, as to insurance was that the United States was only to protect itself, and to allow recovery from the shipyard for the total of the damages, would be to place the parties in the exact situation they would have been in without any provision whatever in the contract as to insurance. Something must have been intended by the parties when the insurance provision was written in the contract."

Although in the Newport News case extrinsic evidence was introduced to show that the shipbuilding company had reduced its bid by $5,000 in consideration of the United States continuing to carry two million dollars of insurance coverage on its hull, machinery, and equipment, we think that such a showing is unnecessary where, in light of the circumstances of the parties, the only reasonable conclusion to be reached is that the parties intended to procure insurance for their mutual benefit. In the case at bar, evidence was introduced to show that it is the custom and usage in the equipment-leasing business for the owner to furnish fire, theft, and collision insurance for the protection of himself and the lessee and for the lessee to carry liability, property damage, and cargo insurance for the same purpose, but we see no need to rely upon such custom even if it does exist. We think that paragraph No. 6, without reference to extrinsic evidence, clearly evinces an intention of the parties to insure for their mutual benefit. Since a "benefit of insurance" clause is more like insurance than it is like the traditional bailee exculpatory clause, we do not feel constrained to defeat the obvious intention of the parties merely because defend-

ant's liability for its own negligence is thereby reduced. As this court stated in N. P. Ry. Co. v. Thornton Brothers Co. 206 Minn. 193, 197, 288 N. W. 226, 228:

"* * * we do not follow the cases which seem to thwart contractual intention solely upon the ground that to give literal effect thereto would relieve a contractor from the legal result of his own negligence."

Having determined that paragraph No. 6 of the rental agreement gives defendant the benefit of plaintiff's insurance, we think that plaintiff may not recover for that portion of his damage which resulted from a risk against which he was obliged to procure adequate insurance. Since the judgment of the trial court in each of the cases before us is fully in accord with this view of the disputed provision of the rental contract, both judgments are hereby affirmed.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER, having been designated to represent the court at the American Law Institute meeting in Washington, D. C., was absent and took no part in the determination of this case.