249 S.W.2d 428 (1952)
MONSANTO CHEMICAL CO.
v.
AMERICAN BITUMULS CO. et al.
No. 42955.
Supreme Court of Missouri, Division No. 1.
June 9, 1952.
*429 Franklin E. Reagan, Sievers, Reagan & Schwartz, St. Louis, for appellant.
Goodbar & Ferriss, Henry T. Ferriss, St. Louis, for respondent.
VAN OSDOL, Commissioner.
Action to recover $18,361.33 for alleged negligence of defendants resulting in fire by which chemicals belonging to plaintiff, Monsanto Chemical Company (hereinafter referred to as "Monsanto"), were destroyed. Defendants by separate answers averred plaintiff's loss was covered by insurance by which plaintiff had been fully compensated. Defendants further alleged plaintiff was obligated by contract to carry insurance for the joint benefit of plaintiff and defendants by virtue of which agreement plaintiff may not recover of defendants for negligence. The trial court ordered the separate trial of the latter issue, which issue involved the construction of the contract. The trial court found for defendants, the court being of the opinion that defendant American Bitumuls Company had no connection with the subject matter of the action; and that defendant California Spray-Chemical Corporation (hereinafter referred to as "Cal-Spray") was not liable because of its contract with Monsanto. Plaintiff Monsanto has appealed from the judgment; but herein plaintiff-appellant does not contend the trial court erred in rendering judgment for defendant American Bitumuls Company.
In 1947, defendant Cal-Spray was engaged in the manufacture of chemical products at its plant in Richmond, California, and later, in 1948 or 1949, began the manufacture of such products at 3514 Big Bend Boulevard in Maplewood, St. Louis County, Missouri.
A letter from plaintiff Monsanto dated November 28, 1947, confirms an agreement. The letter recited that an attached memorandum *430 of particulars was to be considered a part of the agreement. By the confirmed agreement Monsanto was to supply Cal-Spray with powdered 2,4D acid (2,4 Dichlorophenoxyacetic acid) at its Richmond plant, and Cal-Spray was to process and convert the acid, and manufacture "Isopropyl Ester" (a liquid weed killer). The agreement was subject to revision under certain conditions, and provided for a term ending December 31, 1948. Absent notice, it was to be considered as renewed for a further twelve-month period beginning January 1, 1949. Cal-Spray was to receive a stated amount for the processing and the conversion of the powder and the manufacture of the ester, and was to purchase the manufactured ester according to its requirements upon stated terms, conditions and price.
Paragraph Eleven of the memorandum of particulars provided as follows,
"11. Insurance. Monsanto agrees to carry adequate insurance to cover all stocks of materials held by Cal-Spray for Monsanto's account."
In letters of August 9 and December 10, 1948, Cal-Spray advised Monsanto of the contemplated and actual construction of a "new ester unit at Webster Groves" and proposed processing charges to be applicable at that location; these proposals were accepted and confirmed by Monsanto's letters of August 24 and December 20, 1948. The letter of August 24th advised Cal-Spray that the letter was to be considered as "part of the agreement"; and in the letter of December 20th Monsanto advised Cal-Spray that the provisions contained in Cal-Spray's letter of December 10th would become effective as of January 1, 1949. Although various letters mention "Webster Groves" as the location of Cal-Spray's St. Louis County plant, in fact the plant was actually located in Maplewood. Plaintiff, in answer to defendant's interrogatories, stated that 2,4D acid in powder form was delivered to the Maplewood plant to be converted into the ester in accordance with the agreement and memorandum of November 28, 1947. There could be no merit in the contention that the terms of the agreement of November 28th, including the paragraph relating to insurance, were not made applicable to the operation of the Maplewood plant.
The parties entered into a stipulation of further facts, in part as follows,
"1. There was a fire on the premises known as 3514 Big Bend Boulevard, St. Louis County, Missouri, or May 27, 1949, and a certain amount of 2,4D acid in powder form belonging to plaintiff was damaged or destroyed in said fire.
"2. The said fire occurred about 5:30 a.m. in the west end of a building on said premises, erected, owned and used by the defendant California Spray-Chemical Corporation, for the purpose of manufacturing certain weed-killer preparations in which the 2,4D acid was a component part. Said manufacturing operation was, at the time of said fire, being carried on by the said defendant.
"3. The 2,4D acid belonging to plaintiff and damaged by said fire had been delivered by the plaintiff to the defendant California Spray-Chemical Corporation and was stored in its possession in the said building to be processed or converted by said defendant into 2,4D Isopropyl Ester. * * *
"5. The plaintiff after the fire, presented claims to its insurance companies for its loss, and it has collected from said companies in settlement of its claims the total sum of $18,361.33, which sum it has retained."
As stated, the issue separately tried involved the construction of the agreement, particularly the quoted paragraph Eleven of the memorandum of particulars.
Plaintiff-appellant Monsanto contends the trial court erred in construing paragraph Eleven as an indemnity agreement, and in ruling that plaintiff's collection of insurance relieved defendant from liability for negligence. It is urged that the trial court, in construing the contract, had no right to rewrite the contract; that the trial court's theory was contrary to the law of this state by which an insurance company, upon payment of a loss, is subrogated to the rights *431 of the insured; that the collection of insurance for the loss by fire did not relieve the wrongdoer, Cal-Spray, whose negligence caused the fire; and that the paragraph Eleven does not provide in "clear and unequivocal" language that plaintiff Monsanto "intended to release the defendant for negligence."
We believe plaintiff-appellant has misconceived the trial court's construction of paragraph Eleven. The rights of a subrogee are not greater than those of the insured; and the trial court was construing a contract between Monsanto and Cal-Spray relating to the coverage of insurance upon "stocks of materials held by Cal-Spray for Monsanto's account." If Monsanto became obligated by the contract of November 28th to insure for the mutual benefit of both the parties to the contract and did not do so, neither Monsanto nor the insurers may have the advantage of Monsanto's breach of its contractual obligation to Cal-Spray. The responsibility for the failure, if so, of Monsanto to advise its insurers of such obligation to Cal-Spray is a matter of concern only between Monsanto and its insurers. The trial court did not hold that the parties intended that Cal-Spray should be indemnified or exempted from liability for its own negligence, although the parties (to the instant action) could have lawfully so contracted. See generally Restatement, Contracts §§ 574-575; Annotation, 175 A.L.R. 8. See also Hall-Scott Motor Car Co. v. Universal Ins. Co., 9 Cir., 122 F.2d 531. The trial court interpreted paragraph Eleven to mean "that thereby the plaintiff was required to carry adequate insurance on its materials while in the defendant's possession so that not only the plaintiff but also defendant would have protection against liability for the loss of such property by fire; that plaintiff did carry such adequate insurance and has collected from its insurance companies full compensation for its loss, and plaintiff cannot now hold defendant liable for such loss." We are of the opinion the trial court's interpretation was right.
At the outset we have tentatively made what appears to us as the reasonable assumptions that the parties, Monsanto and Cal-Spray, in providing for the various and reciprocal obligations of their agreement, gave their attention to the hazard of loss of Monsanto's materials. They wished to stipulate an obligation, as between themselves, imposing a duty to procure adequate insurance coverage. And it was expressly agreed that Monsanto (not Cal-Spray) was to carry insurance which would adequately protect Monsanto's property against loss.
A rule is recognized that a defendant, who is responsible because of his negligence or other breach of legal duty for the damage or destruction of property of plaintiff, may not mitigate the damages otherwise recoverable to the extent of insurance collected by plaintiff. Dillon v. Hunt, 105 Mo. 154, 16 S.W. 516, Matthews v. Missouri Pacific R. Co., 142 Mo. 645, 44 S.W. 802, and Landau v. Fred Schmitt Contracting Co., 237 Mo.App. 908, 179 S.W.2d 138. The rule, it would seem, should not be held applicable in the instant case, if plaintiff was under contractual obligation to defendant to carry insurance upon the property to the mutual benefit of plaintiff and defendant. Contrast Matthews v. Missouri Pacific R. Co., supra. See also Wells v. Thomas W. Garland, Inc., Mo.App., 39 S.W.2d 409, wherein the St. Louis Court of Appeals applied the rule and expressly stated there was nothing in the contract of bailment between plaintiff and defendant in that case which obligated plaintiff to carry insurance.
Monsanto did (adequately) insure its property against loss by fire and has been paid to the full extent of the value of its property. The stipulation whereby Monsanto was to carry adequate insurance must have been for the benefit of both of the parties to the agreement; otherwise, there would have been no occasion for the stipulation. Newport News Shipbuilding & Dry Dock Co. v. United States, 4 Cir., 34 F.2d 100; Buckey v. Indianhead Truck Line, Inc., 234 Minn. 379, 48 N.W.2d 534. It is true the stipulation did not provide that Cal-Spray should not be held responsible for its negligence in causing a fire, but the stipulation provided that Monsanto was to provide insurance against hazards, manifestly including fire, the proximate or immediate *432 cause of the loss of Monsanto's property. To the extent of Monsanto's stipulated obligation to insure against loss by fire, the insurance stipulated had the effect of satisfying Monsanto's claim against Cal-Spray for its negligence. Newport News Shipbuilding & Dry Dock Co. v. United States, supra. Now since Monsanto was expressly obligated to carry "adequate" insurance, the stipulation provided for insurance which has satisfied in full the claim of Monsanto against Cal-Spray for negligence. Buckey v. Indianhead Truck Line, Inc., supra.
Regardless of whether Cal-Spray was a consignee, a bailee or agent in its possession of the materials belonging to Monsanto, Cal-Spray had an insurable interest in the property, not only for the property right in its claim for service rendered in processing the acid and in manufacturing the ester, but to the full value of the materials. Ferguson v. Pekin Plow Co., 141 Mo. 161, 42 S.W. 711; 44 C.J.S., Insurance, § 183, pp. 880-881. Cal-Spray could have procured insurance (and, had there been no stipulation such as paragraph Eleven, probably would have procured insurance) which would have covered the loss of the materials by fire, even though the fire was due to Cal-Spray's own negligence. Wertheimer-Swarts Shoe Co. v. U. S. Casualty Co., 172 Mo. 135, 72 S.W. 635, 61 L.R.A. 766; St. Louis Ins. Co. v. Glasgow, 8 Mo. 713; 45 C.J.S., Insurance, § 822, p. 870. Plaintiff Monsanto, owner of the materials in Cal-Spray's custody, also had an insurable interest in the materials and could (and did at the time of the fire) have insurance adequate to cover its materials. This is what had been agreed upon by paragraph Eleven of the memorandum of particulars. Inasmuch as either of the parties could have insured the property, there could have been no reason for paragraph Eleven unless it was intended that the insurance Monsanto undertook to carry was for the benefit of both parties, and that Cal-Spray could forgo its right to procure insurance for its own protection.
In Newport News Shipbuilding & Dry Dock Co. v. United States, supra [34 F.2d 102], the plaintiff shipbuilding company entered into a contract to repair the vessel America belonging to the government. The contract provided that the United States agreed to continue "the present hull, machinery, and equipment insurance ($2,000,000) upon the vessel during the period the vessel is at the Contractor's yard." The contractor, shipbuilding company, appealed from an interlocutory decree holding the contractor liable on the ground of negligence for damages by reason of fire. The reviewing court reversed the decree in part. Although the court held the shipbuilding company was liable to the government for negligence, the company was relieved of liability for its negligence to the extent of the government insurance. The court stated, "A careful examination of the circumstances leading up to and surrounding the making of the contract must lead to the conclusion that it was intended by the parties that the United States assumed, by the insurance clause, the risk of loss by fire up to the amount of $2,000,000, and that this assumption of risk was not only for the benefit of the United States, but for the benefit of the shipyard also. To hold otherwise would be to hold that the agreement on the part of the United States to carry the `present hull, machinery and equipment insurance,' had absolutely no meaning whatever, and was of no value to the shipyard."
The judgment should be affirmed.
It is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.