Kenneth POSLOSKY, Nathan Waxman, the Hanover Insurance Company, and National Fire Insurance Company, a Corporation, Appellants,

v.

FIRESTONE TIRE AND RUBBER COMPANY, a Corporation, Respondent.

No. 48233.

Supreme Court of Missouri,

Division No. 1.

Sept. 11, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied Oct. 9, 1961.

Willson, Cunningham, McClellan & Gunn, by John H. Cunningham, Jr., St. Louis, for appellants.

Lashly, Lashly & Miller, John H. Lashly, Paul B. Rava, St. Louis, for defendant-respondent.

COIL, Commissioner.

This case has reached the writer on reassignment.

Individual appellants Poslosky and Waxman, as the then owners and lessors of a building in St. Louis, and the two appellant fire insurance companies which issued their respective fire policies in a total sum of $25,000 on that building, were plaintiffs in an action against respondent corporation for its alleged negligence while occupying the building as lessee in causing a fire which allegedly damaged the building to the extent of $43,849.29. Plaintiff insurance companies had paid the $25,000 proceeds of the policies to individual plaintiffs and, by the terms of the respective policies, had become subrogated to individual plaintiffs' claims against lessee to the extent of the respective payments. Individual plaintiffs sought $18,-849.29 and the insurance companies the total sum of $25,000. Firestone's first affirmative defense was that the provisions of the lease under which it occupied the premises obligated lessors to insure against fire to the full extent of the insurable value of the property and, in case of fire, lessors were to "look solely to the insurance companies for compensation of their damage, if any," and, consequently, said Firestone, it was not liable for any damage to the premises caused by fire. Firestone alleged, also as part of its first affirmative defense, that any damage individual plaintiffs may have sustained was due to their decision to decrease the fire insurance coverage on the building from $50,000 to $25,000, less than the full insurable value of the premises, contrary to the terms of the lease, and that to permit a recovery in this action would constitute "an unconscionable economic windfall" to plaintiffs and that individual plaintiffs were guilty of unclean hands.

It was stipulated that the trial court, without a jury, separately try the issues raised by Firestone's first affirmative defense and determine the value of the property and the extent of the alleged damages. Those issues were submitted upon agreed facts. The trial court adjudged the value of individual plaintiffs' building before the fire to be $25,000, that it had no value after the fire, and thus that the damage caused by the fire was $25,000; and the trial court found for defendant on the issues raised by its first affirmative defense and thus that plaintiffs could not recover. None of the parties appealed from the portion of the judgment as to value and damage and, consequently, the only issue here is the validity of the trial court's judgment on the issues raised by Firestone's first affirmative defense.

Stipulated facts disclosed that on March 11, 1944, a Mrs. White owned the building in question and leased it to Firestone for a period of five years beginning May 1, 1944, at $250 a month with an option to renew for an additional five years at the same rental, the premises to be used, among other things, for tire repairing, retreading, and vulcanizing. Firestone exercised its option to renew and voluntarily agreed (because of an increase in taxes on the building) with those who had succeeded to the ownership of the property to increase the rental $25 a month for the period from July 1, 1949 to June 1, 1950, and on May 10, 1950, entered into an agreement extending the original lease to a term ending April 30, 1959 at a rental of $300 a month, with the proviso that any amount by which the general real estate taxes on the property should exceed $800

a year would be reimbursed to lessors by lessee. On November 30, 1956, the present individual plaintiffs purchased the property and, on the expiration of the total $50,000 fire and extended coverage insurance then in existence, replaced that insurance with a $15,000 policy issued by plaintiff Hanover Fire Insurance Company and a $10,000 policy issued by National Fire Insurance Company, each policy containing an eighty per cent coinsurance clause.

The parts of the lease, paragraph 11 and part of paragraph 15, which directly pertain to the present decisive question, are:

"11. Insurance. Lessor agrees that it will, at all times during the term hereof or any renewal or extension thereof, keep the improvements on the said premises insured against fire and windstorm to the extent of the full insurable value thereof, including all improvements, alterations and additions which may be made, and all moneys collected from such insurance shall be used toward the full compliance of the obligation of Lessor assumed under section 15 of this lease. Memorandum of such insurance, prepared by insurance company, shall be furnished Lessee by Lessor.

\* \* \* \* \* \*

"15. Damage. In case the leased premises shall be so damaged by fire, earthquake, the elements, or any other casualty as to be untenantable, Lessee may terminate this lease, and any rents paid by Lessee in advance shall be refunded. If Lessee elects not to terminate, or in any case in which said premises are damaged and not rendered untenantable, Lessee shall remain in possession of said premises under the terms of this lease, in which case it may serve written demand upon Lessor for the repair or restoration of demised premises by Lessor, and Lessor agrees to forthwith make such repairs and restorations as to

restore the premises to their former state. If Lessor shall fail to begin the repair or restoration of said premises within ten days after such demand, or to complete such repairs or restorations with reasonable promptness, then Lessee may elect to surrender said premises to Lessor, whereupon this lease shall terminate, or Lessee may make such repairs and restorations as Lessee deems necessary, at the expense of Lessor."

It is appellants' contention that the foregoing lease provisions with respect to requiring lessors to carry fire insurance did not exonerate the lessee from liability to lessors for damage caused by its negligence. It is respondent's contention that the provisions of the lease in the respect noted obligated lessors to look only to the insurance proceeds and precluded lessors from recovering from lessee for damage caused by fire, irrespective of whether that damage was due to lessee's negligence.

It seems to us that the language of the lease is plain and unambiguous and clearly expresses the reason for and the purpose of the insurance requirement of paragraph 11. Paragraph 11 provided in effect that lessors must insure the property against fire and windstorm to its full insurable value and that lessors must use all the money collected from that insurance "toward the full compliance of the obligation of Lessor assumed under section 15 of this lease." The obligation assumed by lessors under section 15 was this: in the event the premises were damaged by fire and in the event the lessee chose not to terminate the lease (as it had a right to do), and in the further event that lessee served written demand on lessors to restore the premises, lessors were bound to forthwith restore the building to its former state. The lessee could not have more clearly expressed its purpose to assure lessors' financial ability to comply with their obligation to restore the building to

its former state than by the language used. The reason lessee desired such a provision is obvious. Lessee apparently anticipated that it might desire, because of a particular location, to continue in business at that location, even though the building there might be totally destroyed by fire and cause the cessation of business for a time. Consequently, it was of great importance to lessee to have lessors not only obligated to restore but to have lessors able to restore and thus the provision was inserted to assure the availability of the money with which that restoration might be accomplished; particularly, inasmuch as lessors at the time of the fire loss might be and were in this instance different persons than the original lessor.

There appears to be no reason to speculate as to what the parties might have intended by the language used when, in our view, their intent is clear from what they said. Furthermore, any possible idea that the parties meant more than they said and impliedly meant that lessors could look only to the insurance proceeds to satisfy the tort liability of lessee for its negligence in causing fire damage, is entirely untenable when it is recognized that the lease's language in question was Firestone's language; it was part of a printed lease furnished by Firestone and, by reasonable inference, prepared and used by it in leasing property in various states. It is reasonable to suppose that so important a provision as one exonerating Firestone from liability for fire damage caused by its negligence as lessee or providing that lessors would "look solely to the insurance companies for compensation of their damage," would have been inserted in the lease in clear and unmistakable language, if such matter had been a subject which it intended to cover in the lease. Not only does the lease not contain such a provision but, on the contrary, as heretofore noted, the lease's language clearly stated the purpose for the insurance requirement of paragraph 11 and thus destroyed the validity of respondent's present contention that something more was intended.

Furthermore, when the well-established rule of construction that a contract provision exempting one from liability for his negligence will never be implied but must be clearly and explicitly stated (17 C.J.S. Contracts § 262, p. 644; Meyer Jewelry Co. v. Professional Bldg. Co., Mo.App., 307 S.W.2d 517, 520, 521) is recognized, any attempt to read into the lease in question an intention of the parties to exonerate lessee from liability for damages for or to provide that lessors will look only to insurance proceeds for compensation for damages due to lessee's negligence in causing a fire which destroyed the leased premises and thereby to prevent recovery by insurance companies under subrogation clauses in their policies of insurance, would be to ignore the actual language the parties used as well as to do violence to a well-established rule of construction.

Some of the cases relied on by respondent, as well as some of the cases cited and relied on by appellants, construe leases in which there was a clause obligating the lessee to deliver the premises in as good condition at the end of the term as they were at the beginning of the term, excepting "loss by fire and ordinary wear." The question in each of those cases was whether the parties by the inclusion of such language intended to include loss by all fires whether or not due to lessee's negligence. For example, these cases relied on by respondent construed such a clause as including all fires whether or not caused by lessee's negligence: General Mills v. Goldman, 8 Cir., 184 F.2d 359 (see dissenting opinion at page 367); Cerny-Pickas & Co. v. C. R. Jahn Co., 7 Ill.2d 393, 131 N.E.2d 100 (see dissenting opinion at page 104); United States Fire Ins. Co. v. Phil-Mar Corp., 166 Ohio St. 85, 139 N.E.2d 330 (see dissenting opinion at page 333). And these cases, cited by appellants, hold that a clause like the one

mentioned does not exonerate the lessee from liability to the lessor for damages caused by a fire due to lessee's negligence: Winkler v. Appalachian Amusement Co., 238 N.C. 589, 79 S.E.2d 185; Sears, Roebuck & Co. v. Poling, 248 Iowa 582, 81 N.W.2d 462; Carstens v. Western Pipe & Steel Co., 142 Wash. 259, 252 P. 939; Morris v. Warner, 207 Cal. 498, 279 P. 152; Brophy v. Fairmont Creamery Co., 98 Neb. 307, 152 N.W. 557, L.R.A.1918A 367. In the present case there is no specific provision excepting fire damage from the obligation of the lessee and, consequently, those cases are not pertinent. In two of the cases cited above, however, Winkler v. Appalachian Amusement Co., supra, and Sears, Roebuck & Co. v. Poling, supra, the courts dealt with the further contention that a paragraph of the lease which required the lessor to keep the building insured to the extent of its insurable value exculpated the lessee from liability from fire damage caused by lessee's negligence.

In the Sears-Roebuck case, supra, the court considered these two provisions of the lease:

"Thirteenth: Landlord hereby agrees * * * at his expense to keep said demised premises insured at all times during the term hereof against destruction or damage by fire or tornado for the full insurable value thereof, said insurance, in the event of loss during said term * * * to be payable to Landlord and Tenant as their interests appear under the Fifteenth Clause hereof. * * *

"Fifteenth: * * * In the event the demised premises are hereafter * * * rendered wholly unfit for their accustomed uses, by fire, tornado, earthquake, or any casualty, then either party hereto shall have the right to terminate this lease * * * by giving to the other party hereto, within ten (10) days after the happening of such casualty, written notice of such termination; if said notice be given within said * * * period, this lease shall terminate, as aforesaid, * * * ; in the event said notice be not given within said * * * period, this lease shall not terminate, but Landlord shall, at his own expense, promptly repair and rebuild said premises and restore the same to substantially the condition in which they were immediately prior to the happening of such casualty, and rent shall abate from the date of such casualty until said premises are so repaired, rebuilt and restored."

The court said [81 N.W.2d 467]: "* * it appears the insurance was to constitute a fund for reconstructing the building, if either party desired to do so in the event of its destruction by fire" and held that the foregoing paragraphs, even when considered with the clause excepting loss by fire from lessee's obligation to surrender the property in good condition, did not clearly relieve Sears from liability for fire damage due to its negligence.

In the Winkler case, supra, the court held that this paragraph of the lease:

"The lessors agree to keep said theatre buildings, and the equipment hereby leased, insured to the extent of its full insurable value in some reliable insurance company. In event the premises or property hereby leased shall at any time during the operation and continuance of this lease be damaged or destroyed by fire or other casualty, the lessors shall thereupon and forthwith repair and restore said premises and property to the same condition in which they were before the happening of such fire or other casualty"

"does not expressly or impliedly exempt the defendant from liability for any damage by fire to the demised premises caused proximately by its negligence." 79 S.E 2d 192.

Respondent contends, however, that our case of Monsanto Chemical Co. v. American Bitumuls Co., Mo., 249 S.W.2d 428, is precisely in point and requires the affirmance of the trial court's judgment. We do not agree. In our view the Monsanto case is clearly distinguishable from the present one. The facts in Monsanto were these: Cal-Spray was a company which manufactured chemical products in California and in St. Louis County. It entered into an agreement whereby Monsanto was to supply it with a certain acid in powder form which Cal-Spray would convert and use in manufacturing a certain weed killer. Paragraph 11 of the agreement was:

"Insurance. Monsanto agrees to carry adequate insurance to cover all stocks of materials held by Cal-Spray for Monsanto's account."

Monsanto furnished powdered acid and a fire in Cal-Spray's St. Louis County plant destroyed some of it. Monsanto collected insurance in the sum of $18,361.33 to cover the loss. The trial court, and this court on appeal, held that paragraph 11 of the contract required Monsanto " 'to carry adequate insurance on its materials while in the defendant's possession so that not only the plaintiff but also defendant would have protection against liability for the loss of such property by fire; that plaintiff did carry such adequate insurance and has collected from its insurance companies full compensation for its loss, and plaintiff cannot now hold defendant liable for such loss.' " 249 S.W.2d 431. This court, in approving the foregoing language, pointed out that Monsanto and Cal-Spray obviously wanted to provide for adequate insurance coverage and expressly agreed that Monsanto was "to carry insurance which would adequately protect Monsanto's property against loss." 249 S.W.2d 431. The reason for that conclusion was stated at 249 S.W.2d 432 in this language: "Inasmuch as either of the parties could have insured the property, there could have been no reason for para-graph Eleven unless it was intended that the insurance Monsanto undertook to carry was for the benefit of both parties, and that Cal-Spray could forgo its right to procure insurance for its own protection."

In the present case the situation is entirely different because, as we have noted heretofore, the language the parties used spelled out the reason for the insertion of the insurance provision of paragraph 11, viz., to assure the lessee that lessors would have available and be obligated to use the money to restore the premises in the event lessee chose to elect to have those premises restored. Unlike the language in the Monsanto contract, there is nothing in the language of paragraphs 11 and 15 or in any other provision of the present lease from which it may be reasonably implied that the parties intended that lessee would forgo its right to protect itself from fire damage as a result of its negligence. Of course, in one sense, the insurance in the present case was for the *benefit* of both the lessors and the lessee but the nature and extent of the benefit to the lessee was clearly expressed in the contract, viz., to assure the future financial ability of the lessors to meet their obligation to restore the premises. And such was the *purpose* of the insurance provision of paragraph 11, while the *purpose* of the requirement for insurance on the powdered acid in the Monsanto case was *to provide against financial loss to either party* in the event of the destruction of the material in question.

Respondent also relies upon the two cases cited in our Monsanto case: Newport News Shipbuilding & Dry Dock Co. v. United States, 4 Cir., 34 F.2d 100, and Buckey v. Indianhead Truck Line, 234 Minn. 379, 48 N.W.2d 534.

In the Buckey case the lessor owned a truck which he leased for use by lessee as a motor carrier of petroleum products. The particular lease provision in question was this: "Lessor will carry adequate fire, theft and collision insurance upon such

vehicle. Lessee will carry all liability, property damage and cargo insurance." The court held that although paragraph 6 did not state in express terms that lessee was to have the benefit of lessor's collision, fire, and theft insurance, the paragraph clearly manifested a design to give lessee the benefit of lessor's insurance because the only plausible construction of the paragraph was that the parties intended "to divide the burden of insuring against the various risks incident to performance under the rental agreement." 48 N.W.2d 538, 539.

In the Newport News case, the United States was putting its vessel in dry dock for repairs. After receiving bids which were too high, it revised its specifications and readvertised. One of the revisions eliminated the requirement of the first specification that the shipyard carry insurance on the hull of the vessel while under repair in the sum of two million dollars, for which the premium was $5,000. The revised specification provided that the owner would continue in force its present $2,000,000 insurance on the hull, machinery, and equipment of the vessel during the period it was in the contractor's yard, but that the contractor was required to obtain builder's risk insurance for the amount of the repair contract and on any of the owner's material that was removed from the vessel and stored in the contractor's plant. The vessel was damaged by fire in the sum of $2,000,000 due to the negligence (prima facie) of the contractor. The court held that the insurance which had been retained on the hull by the United States inured to the benefit of the shipyard when all of the circumstances leading up to and surrounding the adoption of the final insurance clause in the contract were considered. A consideration thereof caused the court to conclude that the United States assumed the risk of loss by fire up to $2,000,000 for the mutual benefit of itself and the shipyard because, otherwise, said the court, the United States would have received the benefit of the reduction in the amount of the contract in the sum of $5,000, the cost of hull insurance protection to the shipyard, and would have given nothing in return. In other words, the court was of the view that the shipyard agreed in effect to give the United States the $5,000 premium which it (the shipyard) otherwise would have paid to protect itself against damage to the vessel's hull due to its negligence, in exchange for the owner's agreement to carry that protection for the benefit of the shipyard.

We think it apparent that the decisions in the Buckey and the Newport News cases, supra, like our decision in the Monsanto case, supra, found the intent of the parties by construing language which did not clearly spell out that intent by considering the language and the circumstances under which the language was used. Those cases, however, are not persuasive in our disposition of the present case where we have no difficulty in determining the purpose and intent of the parties from the language they used.

Respondent contends also that lessors "are guilty of unclean hands and barred from a recovery which would constitute an unconscionable economic windfall" because they breached the lease as to the area and extent of fire insurance coverage and failed to furnish lessee with a memorandum of insurance. Firestone points out that at the time individual plaintiffs-appellants purchased the property there was $50,000 insurance coverage on the property described as 3126–32 Locust Street and that they replaced that insurance with $25,000 coverage, with an eighty per cent coinsurance clause, on the property described as 3126–28 Locust Street, leaving uninsured the property at 3130–32 Locust Street, and that they failed to furnish lessee with a memorandum of insurance as required by paragraph 11 of the lease. Aside from the fact that plaintiffs have not invoked equity but seek to recover at law and thus may not be denied relief

on the theory of "unclean hands," Kalivas v. Hauck, 365 Mo. 923, 290 S.W.2d 94, 102[8], and aside from the further fact that the trial court found (not questioned on this appeal) that the full value of the building in question (described in the petition as 3126–32 Locust Street and in defendant's answer as 3126–28 Locust Street, and in the stipulated facts the building is referred to as "said property" and not identified as only part of the whole premises) was $25,000 (the amount of the insurance placed thereon by individual plaintiffs) and irrespective of other reasons which may exist, one answer to respondent's contention is that the lease provided in section 17 that "If default be made on the part of either party in any of the covenants contained herein and not rectified by the defaulting party within fifteen days after receipt of written notice from the other party, then the terms hereby granted shall at the option of said party not in default forthwith cease and terminate." Inasmuch as there was no stipulation as to or other evidence of any notice by lessee of claimed default by lessors in any covenant of the lease, either with reference to the amount of insurance, the premises insured, or the failure of lessors to furnish lessee with a memorandum of insurance, respondent's contention is wholly unavailing. Furthermore, there is no indication that any of the alleged breaches of the lease by individual plaintiffs resulted in any damage to Firestone. Firestone's additional argument under its "unclean hands point" that individual plaintiffs in fact sustained no damage and will receive "an economic windfall" because the real estate transaction as a whole was profitable to them, is irrelevant, once it is established that no provision of the lease bars the appellant insurance companies from asserting their rights to recover from lessee the money paid to insured because of lessee's negligence.

That part of the trial court's judgment which relates to Firestone's first affirmative defense finding for defendant and that plaintiffs are not entitled to recover from defendant because of the matters set forth in that first affirmative defense, is reversed and the case is remanded for further proceedings consistent with this opinion.

HOLMAN and HOUSER, CC., dissent.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.