247 F.2d 249
 AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, a
Corporation, and Central Mutual Insurance Company,
a Corporation, Appellants,
v.
WILSON-KEITH & COMPANY, a Corporation, and Dumas-Wilson &
Company, a Corporation, Appellees.
WILSON-KEITH & COMPANY, a Corporation, and Dumas-Wilson &
Company, a Corporation, Appellants,
v.
AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, a
Corporation, and Central Mutual Insurance Company,
a Corporation, Appellees.
 Nos. 15648, 15649.
 United States Court of Appeals Eighth Circuit.
 Aug. 14, 1957.
 
 Donald N. Clausen, Chicago, Ill. (Clausen, Hirsh & Miller, Chicago, Ill., Karl P. Spencer and Spencer & Duncan, St. Louis, Mo., were on the brief), for American Manufacturers Mut. Ins. Co. and Central Mut. Ins. Co.
 Adolph K. Schwartz, St. Louis, Mo. (Flynn & Parker, St. Louis, Mo., on the brief), for Wilson-Keith & Company and Dumas-Wilson & Company.
 Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.
 WOODROUGH, Circuit Judge.
 
 
 1
 Federal jurisdiction existed in this case by reason of diversity of citizenship. It was commenced as an action for declaratory judgment to obtain adjudication that the two insurance companies, plaintiff, were not liable under certain policies of fire and explosion insurance issued respectively by each of them to Wilson-Keith and Company (covering also the interest of its mortgagee, Dumas-Wilson and Company) and insuring the contents of its manufacturing plant at 4140 Chippewa Street, St. Louis, Missouri, in the aggregate amount of $60,000. Explosion and fire had occurred there on June 10, 1954, during the life of the policies, causing loss of the insured property in an amount exceeding the insurance, but plaintiffs denied liability under the standard increase of hazard clause in the policies which reads:
 
 
 2
 '* * * this company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured: * * *.'
 
 
 3
 Plaintiffs alleged that the insured permitted highly explosive and inflammable chemicals to be brought upon, stored and processed on its premises and so increased the hazard of fire and explosion; that said chemicals exploded, the loss in question resulted, the insurance was suspended by the terms of the policies, and the insurers were not liable.
 
 
 4
 The insured pleaded that the hazard it was insured against in the policies issued by plaintiffs had not been increased by any menas within the control or knowledge of the insured. It also alleged that the increase of hazard clause in the policies, set forth above, relied on for defense by the insurers was superseded to the extent of the other clause of the policies called the 'Work and Materials' clause. By the terms of that clause as it appears in the policies the insurers granted permission to the insured to make 'such use of the premises as is usual and incidental to the occupancy as described therein' and by amendment to the answer and counterclaim made by leave of court, the insureds alleged that the additional terms of the work and materials clause not written in the policies became a part of the insurance contracts in consequence of the policy of the insurance companies to extend additional benefits to their insureds without actually adding the clauses conferring them to their insurance policies as endorsements, where there was no additional premium charge, and where the clauses had been adopted and used in the country by the plaintiffs in policies similar to and like those issued to Wilson-Keith and Company. The amendment to the answer and counterclaim was as follows:
 
 
 5
 '* * * that on or before June 10, 1954, there was on file in the Department of Insurance at Jefferson City, Missouri, on behalf of each of the plaintiffs, the following policy provisions:
 
 
 6
 "Work and Materials: Permission granted for such use of the premises as is usual and incidental in the business as conducted therein, and to keep and use all articles and materials usual and incidental to said business, in such quantities as the exigencies of the business require.'
 
 
 7
 "Liberalization Clause: If during the period that insurance is in force under this policy, there be adopted in this state by the fire insurance rating organization on behalf of this company, any forms, endorsements or rules by which this insurance could be extended or broadened, without additional premium charge, by endorsement, then such extended or boradened insurance shall inure to the benefit of the insured hereunder as though such endorsement or substitution of form had been made,' that these paragraphs were on file, as aforesaid, pursuant to the laws of the State of Missouri and are a part of the policies of insurance issued by the plaintiffs herein; and by reason of the aforesaid policy provisions, the increase of hazard defense asserted by plaintiffs (specifying) paragraphs of pleadings) do not apply.'
 
 
 8
 The insureds counterclaimed under the policies for the amount of the loss to the limit of the policies with interest, costs, attorney's fees and ten per cent penalty.
 
 
 9
 On the first trial of the case the jury disagreed.
 
 
 10
 On the second trial the court instructed the jury on the applicable law, which was the law of Missouri, and the jury returned their verdict in the form of answers to four interrogatories propounded to them as follows:
 
 
 11
 Interrogatory No. 1.
 
 
 12
 Did the taking onto the premises of the defendant Wilson-Keith & Company by Universal Match Company, on the day preceding the fire, of the chemicals which were to be made into pellets, and the subsequent use of said chemicals in making the pellets described in evidence, increase the hazard of fire and explosion in said building?
 
 YES
 
 13
 (Answer 'Yes' or 'No')
 
 
 14
 If you answer to Interrogatory No. 1 is 'Yes' answer the following three interrogatories:
 
 
 15
 Interrogatory No. 2.
 
 
 16
 Was the increase in hazard referred to in Interrogatory No. 1, by any means within the control of the defendant Wilson-Keith & Company?
 
 NO
 
 17
 (Answer 'Yes' or 'No')
 
 
 18
 Interrogatory No. 3.
 
 
 19
 Was the increase in hazard referred to in Interrogatory No. 1, by any means within the knowledge of the insured?
 
 NO
 
 20
 (Answer 'Yes' or 'No')
 
 
 21
 Interrogatory No. 4.
 
 
 22
 Was the bringing of chemicals to the plant of Wilson-Keith & Company by the Universal Match Company, and their use in the plant of the defendant Wilson-Keith & Company in the making of incendiary pellets for Universal Match Company, on the day of the explosion, such use of the premises as was usual and incidental in the business as conducted therein prior to the explosion, and was the keeping in the plant of Wilson-Keith & Company of the chemicals brought to the plant by Universal Match, and in the quantities kept, usual and incidental to the business of Wilson-Keith & Company and as the exigencies of the business of Wilson-Keith & Company required as operated prior to the day of the fire?
 
 YES
 
 23
 (Answer 'Yes' or 'No')
 
 
 24
 On the return of the foregoing verdict, the court entered judgment 'as directed by the answers to these special interrogatories' and awarded recovery in favor of the insured against each of the insurance companies for the amount of the policy issued by it, aggregating $60,000, together with interest and costs.
 
 
 25
 The insurance companies filed motions to set aside the judgment and to enter judgments for them or in the alternative for a new trial and the court entered its order denying the motion to enter judgment for the companies but sustained their motion for new trial. The order for new trial was accompanied by the opinion of the court which gave as the sole reason for the ruling that:'Plaintiffs asked for but did not get their charge to the jury that if defendants knew, or in the exercise of ordinary care should have known, of the increased hazard, then defendants were chargeable with knowledge of the increased hazard. Plaintiffs excepted to the court's failure to charge the jury in this respect. Under the Franciscus case such failure is error.'[1]
 
 
 26
 The insureds promptly filed appeal in this court from the order setting aside the verdict and judgment in their favor and awarding plaintiff a new trial of the case, but as the case had not then been disposed of by final judgment in the district court, this court held that appeal to be premature and dismissed it solely on that ground. Wilson-Keith & Co. v. American Mutual Insurance Co., 8 Cir., 225 F.2d 481.
 
 
 27
 Thereafter in April 1956, there was a third jury trial of the case and a final judgment disposing of the case was then rendered. That judgment was for the insureds and against the insureds and appeal has been taken from it, which is pending in this court as No. 15,648.
 
 
 28
 The insureds prosecute this appeal (No. 15,649) to review the interlocutory order which set aside the verdict and judgment entered in their favor on the second trial of the case and awarded a new trial to the insurance companies. They point out that it was duly adjudicated on that second trial by the court's instructions and the answers of the jury to the first and fourth interrogatories that the insurance companies had superseded the increase of hazard clause of their policies in this case by granting permission (as found by the jury) 'for use of the premises (of the insured) as is usual and incidental in the business as conducted therein and to keep and use chemicals and materials usual and incidental to said business in such quantities as the exigencies of the business require,' and as further found by the jury, that 'the bringing of chemicals to the plant * * * and their use in the plant in the making of incendiary pellets * * * was such use of the premises as was usual and incidental to the business as conducted therein prior to the explosion * * *' as was also 'the keeping in the plant * * * and in the quantities kept (of said chemicals) * * * usual and incidental to the business and as the exigencies of the business required, as operated prior to the day of the fire.'
 
 
 29
 The insureds further stress that the jury found on the second trial by answers to interrogatories one and four that although the bringing, storing and processing of the chemicals on the insured's premises increased the hazard, the use made of the premises and keeping and using the chemicals and materials in the quantities required by the exigencies of the business was usual and incidental to the business conducted therein. They assert, accordingly, that the judgment entered in their favor on the second trial was required by and was in accord with and fully supported by the answers of the jury to the first and fourth interrogatories.
 
 
 30
 As the jury found by its answers to the second and third interrogatories on the second trial, that the increase in hazard from the chemicals was not 'by any means within the control' nor 'by any means within the knowledge of the insured,' these findings obviously required the judgment entered in the insureds favor on that trial unless the court erred in refusing to give the instructions requested by the insurer in respect to knowledge. The instruction which the court gave in that regard was as follows:
 
 
 31
 'You will recall the testimony regarding the position of the defendant, Wilson-Keith, that they had no knowledge of the explosive character of the chemicals brought to their plant by Universal Match. As a matter of fact, they disclaim knowing what the chemicals were, prior to the fire. You will recall the testimony of some of the witnesses that representatives of that Universal Match told Wilson-Keith's representatives that the making of these chemicals-- I am repeating that because cause it refers to this interrogatory-- that it was not hazardous or dangerous and that they were not explosive. Now, if you find that the increase in hazard of fire or explosion by means of bringing the chemicals into the premises by Universal Match and the processing into pellets was within the knowledge of the Wilson-Keith & Company, the defendant, then you should answer interrogatory No. 3, 'Yes.' Unless you so find, you should answer interrogatory No. 3, 'No.'
 
 
 32
 'With respect to the meaning of the word 'knowledge,' as used in the insurance policies, and in the third interrogatory, and with respect to whether or not Wilson-Keith & Company had knowledge of the means of increase of hazard, I say to you that, to prove knowledge by Wilson-Keith & Company of increase in hazard, as I have referred to it, if you find there was an increase in hazard, it is incumbent upon the plaintiffs to prove by a preponderance or greater weight of the evidence that the defendant, Wilson-Keith & Company, did know and have knowledge that the manufacture and processing of the pellets on June 10th of the chemicals brought there by Universal Match Company was an increase in hazard of fire or explosion. And, as I said, I think if you went to Webster's dictonary, you would find substantially that 'knowledge' means to know, and again I say to you that the use of the term in the policy, and in this interrogatory, and in this trial, has no technical meaning; it means such as you would use in your everyday affairs.'
 
 
 33
 At the conclusion of the instructions, Counsel for the insurers entered the following exception or request:
 
 
 34
 'If your Honor please, for the record, I just want to except to that portion of the charge with reference to knowledge, in that I think that the jury should have been instructed that if Wilson-Keith & Company knew or by the exercise of ordinary care should have known.'It is shown by the opinion of the District Court accompanying the order for new trial that the only reason for granting a new trial was that the court had failed to instruct in accord with that exception or request by the insurance companies 'that if defendants knew or in the exercise of ordinary care should have known of the increased hazard, then defendants were chargeable with knowledge of the increased hazard.' The court said: 'under the Franciscus case (Patriotic Insurance Co. of America v. Franciscus, 8 Cir., 1932, 55 F.2d 844) such failure is error.'
 
 
 35
 The insureds contend on this appeal that the court erred in ordering a new trial after entering judgment for them on the second trial for two reasons: first, because the finding of the jury under interrogatories one and four supported and required the judgment in their favor regardless of whether there had been an increase in hazard by means within the control or knowledge of the insured or not; and second, because the instruction on the meaning of 'knowledge' in the increase of hazard clause that had been requested by the insurance companies and refused by the court was not in accord with the law of Missouri which controlled and the denial of it was not error.
 
 
 36
 The insurance companies contend (1) that the insureds have no right to review of the order granting a new trial after judgment on the second trial of the case because they obtained a judgment in their favor on the new trial; (2) that the finding of the jury to the effect that the increase in hazard from the chemicals was permitted by the insurers under the Work and Materials clause of the policies was not supported by any evidence and was contrary to the evidence; (3) that the order granting new trial was required by Patriotic Insurance Co. v. Franciscus, supra, and there is no clear showing of abuse of discretion or manifest error of law in granting the new trial.
 
 
 37
 The record of the proceedings had and the evidence taken on the third jury trial of this case has been filed in the appeal of the insurance companies now pending as No. 15,648, and the charging of the jury on the second trial together with the jury's verdict and the judgment for the insureds and the order for new trial plus the trial court's opinion accompanying that order have been included in that record. That record also includes an excerpt from instructions given the jury on the first trial, where the jury disagreed, to the effect that 'knowledge' in the increase of hazard clause in the policies meant that insured had knowledge that the chemicals were explosive and their presence increased the hazard. By stipulation of all parties the single printed record covers both appeals, No. 15,648 and this appeal, No. 15,649.
 
 
 38
 The record shows that the pleadings were the same on both the second and third trials and the only difference we note in the instructions is that on the third trial the court's instruction to the jury in respect to the interrogatory whether the increase of hazard was 'by any means within defendant's knowledge,' included a declaration that the burden on the insurers was 'to prove either that the insured did know and have knowledge or in the exercise of reasonable care should have known' of the increase of hazard.
 
 
 39
 Neither of the parties to this appeal has deemed it necessary to bring up a transcript of the evidence that was taken on the trial to which this appeal relates, namely, the second trial, and the appeal must accordingly be determined on the question of law presented by the pleadings, instructions, propounding of interrogatories, answers of the jury, the judgment, the motion for new trial, and the order which grants the new trial and is appealed from, together with the opinion of the court accompanying it.
 
 
 40
 The parties agree in their briefs that an order granting a new trial after judgment should be reversed if there is a manifest error of law. The citations are in accord. Buder v. Fiske, 8 Cir., 174 F.2d 260; United States v. Hayes, 9 Cir., 172 F.2d 677; Kanatser v. Chrysler Corporation, 10 Cir., 195 F.2d 104; Atlantic Greyhound Corp. v. Lauritzen, 6 Cir., 182 F.2d 540; Standard Oil Co. v. Brown, 5 Cir., 238 F.2d 54, 56.
 
 In the last cited case, the court said:
 
 41
 '* * * Appellant here contends that the court's grant of the motion for new trial was error; that it was an error of law which can be corrected only by our reversing the second judgment and reinstating the verdict of the jury on the first trial and causing judgment to be entered in its favor thereon.'
 
 
 42
 The court agreed with this view and stated:
 
 
 43
 'This Court has the power to reinstate the first verdict where the trial court has clearly based its grant of a new trial on an error of law. * * * Finn v. American Fire & Casualty Co., 5 Cir., 207 F.2d 113; Marshall's United States Auto Supply, Inc., v. Cashman, 10 Cir., 111 F.2d 140; Pettingill v. Fuller, 2 Cir., 107 F.2d 933.'
 
 
 44
 "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.' 28 U.S.C.A. 2106.'
 
 
 45
 "Where the appellate court finds that the grant of a new trial was the result of prejudicial legal error it should remand for such further proceedings as the circumstances warrant, which may, when appropriate, be that the verdict or judgment following the first trial be reinstated and judgment entered accordingly.' 6 Moore's Federal Practice, P59.15, p. 3904.'
 
 
 46
 1. We find no merit in the contention for the insurance companies that the order for new trial should not be reviewed because the judgment which was rendered on the new trial favored the insured. The verdict on the third trial was not identical with that on the second trial, but regardless of the different results in the trials, the function of this court is to review alleged errors and if the insureds had become, in due course, vested with a valid judgment, they are entitled to have the action of the trial court which divested them of it reviewed for the alleged manifest error of law.
 
 
 47
 2. As to the finding of the jury on the second trial that the bringing of the chemicals onto the premises and the storage and use of them was usual and incidental to the business of the insured and in quantities as the exigencies of the business required.
 
 
 48
 It is clear that if this finding was in accord with proper instructions and supported by the evidence, the defense of increase of hazard became of no avail to the insurance companies. It is well settled under Missouri Law that even under insurance policies which expressly prohibit the keeping of specified highly inflammable or explosive articles and in terms avoid the insurance for violation of that prohibition, the insurance remains in force where keeping the prohibited article is usual and incidental in the business and required by its exigencies as operated. State ex rel. Agricultural Ins. Co. of Watertown, New York v. Allen, Mo., 254 S.W. 194, affirming Rabok Mfg. Co. v. Agricultural Insurance Co., 212 Mo.App. 600, 236 S.W. 916.
 
 
 49
 The court's instructions submitted to the jury that there was evidence before them to the effect that the insured had carried on business in their location for a little over a year and were engaged in the manufacture of pills. The fire and explosion insurance was on the contents of their building in which their business was carried on which included machinery for the manufacture of pills and pellets. A particular machine for that purpose was explained in great detail and a picture of one similar was exhibited. That some time prior to April, 1954, an agreement was reached between the Universal Match Corporation and the insured that a quantity of pellets for use in flame throwers would be manufactured in the building of the insured by the use of one of its machines and a quantity of such pellets were so manufactured during that month without incident of any kind. Thereafter on June 9th, 1954, the day before the explosion, the match company brought onto the premises of the insured several buckets or pails containing chemicals out of which pellets were to be manufactured with the machine to be used in flame throwers. An employee of the insured mixed the chemicals and the mixture was stored over night and brought near the machine on the morning of the tenth. That there was testimony that tests were made of chemicals of a similar formula to that that was used on the June 10th operation and that representatives of the match company informed representatives of the insured prior to the explosion that the chemicals delivered and which were to be used in manufacturing the pellets would not involve any hazard or words to that effect; that the chemicals were not explosive and that there was no danger involved in the manufacture of the pellets. The pellets were being made for the government. The formula was secret and could not be released without the permission of the government. At the time of the explosion representatives of the match company, as well as representatives of the insured, were in the building. The judge said it appeared to him that the presence of these people in the building when the pellets were being manufactured was strong evidence that they were not expecting any explosion. The exact cause of the explosion could only be inferred from the circumstances. But there was no question that it occurred and caused the death of the match company's engineer and a total loss of the contents of the building, exceeding the insurance.
 
 
 50
 The court instructed 'since the defendant Wilson-Keith & Company has taken the position in this case that the use of the premises for the making of the pellets and the presence on the premises of the pellets brought there for that purpose by Universal Match were usual and incidental to the business therein prior to the fire and that the keeping of the chemicals in such quantities as brought there by Universal Match was usual and incidental to the business and as the exigencies of the business required prior to the fire, therefore the burden of proof is on the defendant Wilson-Keith & Company to sustain this issue. If they have sustained the claim, you should answer interrogatory number 4, yes, if they have failed to sustain it you should answer interrogatory number 4, 'no.' The jury answered it yes.
 
 
 51
 The record of the giving of the instructions shows that no exceptions were taken by the insurance companies to the above statements of the court concerning the evidence that was before the jury and the burden of proof that was upon the insured as to interrogatory number 4. By submitting the issue to the jury the court indicated its conclusion that there was sufficient evidence to support the affirmative answer given by the jury and the record shows no motion by the insurers for directed verdict on the issue. On the record before this court on this appeal it seems clear that as the loss was thus found to have occurred while the insureds were making a use of the premises permitted by the insurance contract, they were entitled to the recovery awarded them whether there had been increase of hazard by means within their control or knowledge or not. If so, it was plainly error for the court to vacate the judgment and grant a new trial.
 
 
 52
 It is contended for the insurance companies that this court may not so decide on this appeal because they would thereby be deprived of an opportunity to present their main defense to the claim the insureds make under the work and material clause. That defense is that there was no evidence that the use being made of the premises at the time of the fire was permitted by the insurance contracts and the finding that it was permitted use was contrary to the evidence.
 
 
 53
 But there appears to be no basis for that contention in the record that has been brought up on this appeal. The insurance companies were informed that the insureds deemed themselves aggrieved by the order for new trial entered after judgment had been entered in their favor on the second trial. The appeal which the insureds prosecuted from that order was dismissed here not for want of merit but only for want of a final judgment in the case. It was plainly to be expected that the validity of the judgment which was vacated would be for review in this court and on such review this court is bound to accord the general presumption in favor of the regularity and validity of a judgment. We will not indulge in the assumption that the declarations of the court in its instructions and the findings of the jury in its verdict were unsupported. The record before us shows no exceptions taken to the court's declarations concerning the evidence supporting the jury's answers to the fourth interrogatory and no reason for vacating the findings and judgment based on that answer. The claim that the evidence is insufficient to support a verdict will not be considered on appeal where the record discloses no motion for directed verdict on that ground. The action of the court in granting a new trial without any reference to the fact that the judgment thus set aside was supported by the jury's verdict on the first and fourth interrogatories was manifestly erroneous.
 
 
 54
 3. As to 'knowledge' within the increase of hazard clause of the policies.
 
 
 55
 As shown by its opinion accompanying its grant of a new trial here complained of, the court did not base its action upon its appraisal of the law of Missouri but referred only to the decision of this court in the Franciscus case, 55 F.2d 844, and declared that that decision required the instruction requested by the insurers as above set forth.
 
 
 56
 In the Franciscus case, the owner of a two story brick building in St. Louis, Missouri, which was leased to tenants, sued the insurance company on its policy of fire insurance on the building to recover for a fire loss to the building that occurred during the life of the policy and the company defended among other things on an increase of hazard clause of its policy reading like that contained in the policies here involved. It appears that there was an illicit still in the basement of the building, including a large concrete vat, large quantities of mash, copper coils, etc., which increased the hazard.
 
 
 57
 On the trial of the case the jury found by its verdict that the insured neither knew nor by the exercise of ordinary care should have known of that increase of hazard and judgment was entered in his favor. On the appeal to this court none of the parties questioned that finding of the jury. The contention of the insurance company so far as relevant here was that the provision in the lease that "the lessor or its legal representatives may at all times enter upon said premises for the purpose of examining the condition thereof,' established that the increased hazard was by means within the control of the insured because if (the landlord) had visited the basement as he had the right to do, he would have found the still and had the power to enforce its removal.' 55 F.2d 849.
 
 
 58
 This court overruled that contention. It declared that the increase of hazard clause in the policy was not intended to impose on the insured the burden of an insurer that the hazard should not be increased under all conditions.
 
 
 59
 The trial court had instructed the jury on the trial that if the landlord 'did not know and in the exercise of ordinary care should not have known' of the increase of hazard, then the increase was 'not within plaintiff's knowledge or control.' That instruction favored the insurer as to the meaning of 'knowledge' in the clause and had not harmed the insured in view of the jury's verdict. There was accordingly no controversy or discussion about it in this court.
 
 
 60
 It is true that the opinion of this court in the Franciscus case carried discussion beyond the point that was involved and decided on the appeal and it assumed correctness of the instructions that had been given and were not in controversy, but the decision was on January 23, 1932, and on February 23, 1932 the Supreme Court considered and declared the meaning of the same standard increase of hazard clause in fire insurance policies in St. Paul F. & M. Ins. Co. v. Bachmann, 285 U.S. 112, 52 S.Ct. 270, 271, 76 L.Ed. 648. That case directly involved the old standard prohibited articles warranty clause rather than the standard increase of hazard clause, but the Supreme Court considered both clauses and contrasted them. It declared them to be distinct and that the increase of hazard clause 'is not violated unless there is increase of hazard within the knowledge and control of the insured.'
 
 
 61
 That decision was prior to Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, but our study of the cases convices that the interpretation it gave to the increase of hazard clause is settled law.
 
 
 62
 Certainly it is in Missouri. In Packard Mfg. Co. v. Indiana Lumbermens Mutual Ins. Co., 356 Mo. 687, 203 S.W.2d 415, the Supreme Court of Missouri cited the Bachmann case and made the same contrast between the 'prohibited articles warranty' and the 'increase of hazard warranty.' It quoted with approval the declaration that 'the latter is not violated unless there is increase of hazard within the knowledge and control of the insured.'
 
 
 63
 We find no case holding that insurance has been forfeited under the increase of hazard clause in the absence of proof or knowledge on the part of the insured.
 
 
 64
 Appleman in Insurance Law and Practice, Section 2941, page 5, says:
 
 
 65
 'To avoid a fire policy the increase of hazard must take place within the insured's knowledge and control.'
 
 
 66
 As explained in Commercial Union Fire Ins. Co. v. Capouano, 55 Ga.App. 566, 190 S.E. 815, 816:
 
 
 67
 'The expression 'control or knowledge,' as used in the policy, is symonymous with 'control and knowledge.' Reasonably interpreted and construed favorably to the insured, 'control' presupposes knowledge. It would be unreasonable to hold that a person had control of a thing of which he had no knowledge or to say that he had control of a dangerous substance when he did not know of its danger.'
 
 
 68
 The following texts and decisions support the interpretation of the increase of hazard clause quoted above from the Supreme Court of the United States. Liverpool & L. & G. Ins. Co. v. Lavine, 5 Ala.App. 392, 59 So. 336; German Ins. Co. of Freeport, Ill. v. Goodfriend, 30 Ky.Law Rep. 218, 97 S.W. 1098; Buccola v. National Fire Ins. Co., 18 La.App. 353, 137 So. 346; Andrews v. Dirigo Mut. Fire Ins. Co., 112 Me. 258, 91 A. 978; Procacci v. United States Fire Ins. Co., 118 N.J.L. 423, 193 A. 180; Knight v. Boston Ins. Co., 113 N.J.L. 132, 172 A. 594; Bitonti v. National Lib. Ins. Co., 96 Pa.Super. 521; Williamsburg City Fire Ins. Co. v. Weeks Drug Co., 103 Tex. 608, 132 S.W. 121, 31 L.R.A.,N.S., 603; Hartford Fire Ins. Co. v. Dorroh, 63 Tex.Civ.App. 560, 133 S.W. 465; Joslin v. National Reserve Ins. Co., 201 Wis. 506, 230 N.W. 711; Redman v. Hartford Fire Ins. Co., 47 Wis. 89, 1 N.W. 393; Appleman, Insurance Law & Practice, Section 2941, page 5; Joyce on Insurance, Section 2222; Merrill v. Insurance Co. of North America, C.C., 23 F. 245; Nebraska & Iowa Ins. Co. v. Christiensen, 29 Neb. 572, 45 N.W. 924.
 
 
 69
 In the Supreme Court of the United States and many of the cases cited, the increase of hazard clause has been considered and applied as a unitary provision having the meaning in its entirety of control and knowledge, but on the second trial of this case, the clause was split up into two interrogatories; No. 2 was related to control and No. 3 to knowledge. The submission by the interrogatories instead of for a general verdict was pursuant to stipulation of the parties and we express no opinion upon the propriety of it. But the instruction as to the meaning of 'knowledge' to which the insurers excepted was not contrary to Missouri law nor was the giving of it erroneous. The court said that in respect to whether or not Wilson-Keith & Company had knowledge of the means of increase in hazard, the term 'knowledge' had no technical meaning and meant 'to know.' Counsel for the insureds took exception 'to that part of the charge and reference to knowledge.' Counsel said, 'I think the jury should have been instructed that if (the insured) knew or by the exercise of ordinary care should have known.'
 
 
 70
 In that state of the record, it is clear that if the insurers were not entitled to a charge that 'knowledge' in the increase of hazard clause of the policies 'meant knew or should have known' they were not entitled to have a new trial granted them. We are not cited to any cases in Missouri to the effect that the doctrine of constructive or imputed knowledge may be read into a fire insurance policy. The doctrine is applicable to master and servant cases involving negligence but insurance is a different matter entirely.
 
 
 71
 In Wertheimer-Swarts Shoe Co. v. United States Casualty Co., 1952, 172 Mo. 135, 72 S.W. 635, 638, 61 L.R.A. 766, the Supreme Court of Missouri said:
 
 
 72
 'If we should construe this clause to mean, as defendant contends, that the plaintiff cannot recover for the damage to his goods if by reasonable care he could have guarded against the accident, then it takes all the life out of the policy, and renders the defendant liable only when the plaintiff and his servants have been without negligence. What indemnity would there be in an insurance policy purporting to cover property in a factory like this, where there are perhaps hundreds of servants, if the insurer were liable only in case no one was negligent? * * *
 
 
 73
 'This instruction, like that given at the request of the plaintiff was more favorable to the defendant than the law sanctioned. It, in effect, excepts from the risk loss occurring through the negligence of the insured or its servants. The proposition is thus expressed in the brief of defendant's learned counsel. 'We submit that, under the terms of this policy, no injury can be regarded as an accidental injury which could have been avoided by reasonable effort on the part of plaintiff.' To sustain that proposition would be to overthrow a wellestablished principle that lies at the foundation of insurance.'
 
 
 74
 In Kansas City Stockyards Co. v. A. Reich & Sons, Inc., 1952, 250 S.W.2d 692, 698, the Supreme Court of Missouri said:
 
 
 75
 'It is no defense to a suit on an ordinary fire policy to assert that the property was destroyed by fire due to the negligence of the insured not amounting to fraud. Wertheimer-Swarts Shoe Co. v. United States Casualty Co., 172 Mo. 135, 72 S.W. 635, 61 L.R.A. 766, 95 Am.St.Rep. 500; Fleisch v. Insurance Co. of North America, 58 Mo.App. 596; Home Ins. Co. v. Springdale Motor Co., 200 Ark. 893, 141 S.W.2d 522.
 
 
 76
 'If the property were deliberately burned by the insured, that is another question, but it is a matter of common knowledge that a great many fires which destory property are due to the negligence of someone. See Commercial Union Assurance Co. v. Foley Bros., 141 Minn. 258, 169 N.W. 793.'
 
 
 77
 In Missouri as elsewhere the words of an insurance policy which are plain and unambiguous must be given their commonly accepted meaning and there was no occasion in this case for the court to assign to the word 'knowledge' in these policies any other meaning than the ordinary and accepted one.
 
 
 78
 The insurers were not entitled to the instruction that the requirement of knowledge in the increase of hazard clause of the policies was satisfied if the insured 'knew or by the exercise of ordinary care should have known' of the increase of hazard. The insured was not in violation unless the increase of hazard was by means within its control and knowledge. The ruling of the court to the contrary and the grant of a new trial amounted to manifest error of law.
 
 
 79
 As we conclude that the new trial should not have been granted, it is not necessary to discuss at length the points raised for the insurance companies on their appeal from the third trial and the later judgment against them. But as that appeal, No. 15,648, contains the transcript of the evidence taken in respect to the same explosion and loss which are involved in this appeal, we have not failed to consider the evidence, the points raised and the arguments on that appeal also as possibly tending to throw further light on this appeal.
 
 
 80
 The jury found on the third trial under the instructions of the court that the insured neither knew nor in the exercise of care should have known that the manufacture and processing of the pellets from the chemicals brought there by the Universal Match Company was an increase of fire or explision hazard.
 
 
 81
 But the instruction on that trial to the effect that the insurance should be forfeited under the increase of hazard clause even if the insured did not know of any increase of hazard, practically compelled the jury to find as it did, that the hazard was increased by means within the insureds 'control.' If control in the clause is not construed as the courts have construed it to mean understanding intelligent control directed by knowledge, then the clause may well produce forfeitures more harshly than the old prohibited articles clause. No way is pointed out in the evidence in this case in which the insured could have found out the increase of hazard in the exercise of ordinary care. The increase was disclosed ex post facto. The match company's chemical engineer who had made tests and was working with the accused chemical material was so confident of its harmlessness that he remained right by it. A specified prohibited article might be much easier to discover and remove than a means of increasing hazard of which an insured has no knowledge. The more complete record of the details of the loss contained in the record of the third trial does not show that any prejudice or injustice results from our deciding liability on the policies on the shorter record as we have done. The insured bought and paid for insurance against loss of the contents of its manufacturing plant by explosion. It suffered the loss while it was carrying on its business openly and in good faith and neither knew nor could have known in the exercise of reasonable care that the hazard had been increased.
 
 
 82
 The shaping of mixtures of chemicals into pills or pellets by machinery was the regular and usual business of the insured and there was no evidence of deception, concealment or even misunderstanding of the insurance companies attributable to the insured. Explosion was an inescapable hazard of the business. The insurance companies agreed, for consideration, to indemnify against it and we find no good reason to excuse them from performance.
 
 
 83
 The judgment here is that the grant of new trial be reversed and the case is remanded with instructions to reinstate the judgment entered on the second trial for the insureds on the counterclaim as of the date of the entry thereof. On the appeal in No. 15,648, the judgment is that the case is remanded with instructions to vacate the judgment entered on the third trial there appealed from.
 
 
 84
 Reversed with instructions in No. 15,649.
 
 
 85
 Reversed with instructions in No. 15,648.
 
 
 
 [1]
 Memorandum opinion rendered, and order entered by Judge Hulen, June 7, 1955, as follows:
 'Plaintiffs have filed motions to set aside the judgments and to enter judgment for plaintiffs, and in the alternative for a new trial.
 'We have read the briefs submitted on the motions and it is our opinion that this case comes within the rulings of Patriotic Ins. Co. of America v. Franciscus, 8 Cir., 1932, 55 F.2d 844. Neither party has cited any Missouri cases and our search has revealed none.
 'In the Franciscus case the Court reviews authorities from many states and based upon its research finds that hte holder of a policy of insurance is not an insurer 'against the introduction of increased hazard, but that his liability depends upon his knowledge, or upon circumstances which, by the exercise of ordinary care and diligence, would result in such knowledge.'
 'In the Franciscus case the Court gave an instruction reading in part, 'and if plaintiff did not know it (increase of hazard), and in the exercise of ordinary care should not have known it,' then the increased hazard was not within insured's knowledge or control.
 'True the facts of the Franciscus case and those in the case presented on this record are not exact, but in my opinion the distinction to be made between the two cases is not absolute but one of degree.
 'Our conclusion is that plaintiffs' motion to set aside the judgment and enter judgment for the plaintiffs should be overruled. The question of knowledge and control is a fact for the jury to pass on.
 'Plaintiffs asked for but did not get their charge to the jury that if defendants knew, or in the exercise of ordinary care should have known, of the increased hazard, then defendants were chargeable with knowledge of the increased hazard. Plaintiffs excepted to the court's failure to charge the jury in this respect. Under the Franciscus case such failure is error.
 'Order.
 'Plaintiffs' motion to set aside the judgments herein and ot enter judgment for the plaintiffs is Overruled.
 'Plaintiffs' motion for a new trial is Sustained.'